COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Humphreys and O'Brien
Argued at Fredericksburg, Virginia

BRAULIO M. CASTILLO

v.        Record No. 1499-17-4

LOUDOUN COUNTY DEPARTMENT
 OF FAMILY SERVICES

OPINION BY
CHIEF JUDGE GLEN A. HUFF
APRIL 3, 2018

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Steven E. Sincavage, Judge

Kelly L. King (King Downing PLC, on briefs), for appellant.

Sandra A. Glenney, Assistant County Attorney; Alexander E.
Morgan, Guardian *ad litem* for the infant children (Loudoun
County Attorney's Office; Hartsoe & Morgan, P.L.L.C., on brief),
for appellee.

Braulio M. Castillo ("appellant") appeals the rulings of the Circuit Court of Loudoun

County ("circuit court") finding that he abused and neglected his minor children under Code

§ 16.1-228(1) and (5) and terminating his residual parental rights to those children pursuant to

Code § 16.1-283(B) and § 16.1-283(E)(ii).  On appeal, appellant challenges certain of the circuit

court's evidentiary rulings, the circuit court's decision to consider the abuse and neglect issue

during the same proceeding as the termination issue, its decision to hold evidence open pending

the final sentencing order in appellant's criminal trial, and the sufficiency of the evidence to

support both the abuse and neglect and termination rulings.  For the following reasons, this Court

affirms the circuit court's decisions.

## I. BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (citing Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002)). So viewed, the evidence is as follows.

### Events Leading to Removal

On November 1, 2013, the circuit court issued a protective order prohibiting appellant from having contact with his wife, Michelle Castillo, except by agreement or as necessary to facilitate visitation exchanges with their children. Appellant and Ms. Castillo had been married for seventeen years when the protective order was entered, and they were parents to four minor children. Appellant is the biological father of J.C., born July 9, 2004; Z.C., born October 22, 2007; and B.C., born July 1, 2010. The fourth child, V.C., was born on February 7, 2003 and adopted by the couple as an infant. The basis of the protective order was appellant's repeated verbal, physical, and sexual abuse of Ms. Castillo, often in the presence of one or more of the children. Pursuant to the order, appellant had visitation with the children on alternate weekends and every Wednesday from 4:00-7:00 p.m.

Ms. Castillo picked up the children after their regularly scheduled visitation with appellant on the evening of Wednesday, March 19, 2014. On the following morning, March 20, appellant received a telephone call indicating that the children could not find their mother. Although the protective order prohibited appellant from having contact with Ms. Castillo or the children outside of scheduled visitation periods or other agreed times, appellant went to Ms. Castillo's house, looked around the house for Ms. Castillo, dressed the children, and took all but the youngest to school. The youngest remained with appellant.

The Loudoun County Department of Family Services ("DFS") received a report of suspected abuse or neglect of the children later that day. The report indicated that law enforcement officers had found Ms. Castillo deceased that morning, hanging in the basement bathroom. The report also advised that because appellant was a person of interest in the investigation of Ms. Castillo's death, the children should not be returned to appellant's care. Child Protective Services ("CPS") assumed custody of the children the same day and placed them with David and Stephanie Meeker, friends of the Castillo family, pursuant to a safety plan developed with appellant's consent.[1]

Proceedings Before the Juvenile Court

DFS filed petitions with the Loudoun County Juvenile and Domestic Relations District Court ("JDR court") on March 28 alleging abuse and neglect of the children. The JDR court entered emergency removal orders that same day granting DFS temporary legal custody of the children. Following a preliminary removal hearing on April 4, the JDR court entered preliminary removal orders finding that each child had been abused or neglected and awarding temporary legal custody to DFS. Meanwhile, on April 1, appellant was charged with the first-degree murder of Ms. Castillo, breaking and entering with intent to commit murder, and violation of the protective order.

A series of foster care plan reviews and permanency planning hearings ensued. Although DFS's original goal for the children was to return them home, DFS changed that to a concurrent goal of returning home or adoption in December 2014.[2] The JDR court approved the concurrent

_____

[1] A joint estate plan for appellant and Ms. Castillo named the Meekers guardians of the children in the event of the parents' deaths.

[2] Appellant appealed the JDR court's dispositional orders approving the goal of returning the children home to the circuit court, with a hearing date set in September 2015. DFS noted that it only retained the goal of returning the children home in December 2014 because of the pending appeal.

goals as an interim plan in permanency planning orders dated January 20, 2015, and set a subsequent hearing for September 8, 2015. DFS filed updated foster care plans and petitions for permanency planning hearings setting forth an exclusive goal of adoption on August 14, 2015. The JDR court postponed this second permanency planning hearing pending resolution of the criminal case against appellant. On June 16, 2016, a jury found appellant guilty of the first-degree murder of Ms. Castillo, breaking and entering with the intent to commit murder, and violating the protective order.[3] The next day, DFS filed petitions to terminate appellant's residual parental rights with respect to each of the children pursuant to Code § 16.1-283(B) and 16.1-283(C)(2). DFS amended these petitions to include Code § 16.1-283(E)(ii) and 16.1-283(E)(iv) as additional grounds for termination on June 22, 2016. The JDR court ultimately entered orders terminating appellant's residual parental rights to the children, which appellant appealed to the circuit court on July 1, 2016.

The appeal of the dispositional orders had been originally scheduled for November 18–19, 2014, but following two continuances requested by DFS, was rescheduled for September 19–23, 2016. After appellant noted his appeal of the termination orders, DFS moved on July 7, 2016 to combine the appeals of the dispositional and termination orders into a single proceeding. Appellant objected to combining the hearings because the criminal case had not yet concluded, but the circuit court nevertheless granted the motion to combine. On August 26, 2016, appellant moved to stay the combined appeal "until such time as [appellant] is sentenced and a final order is entered in the underlying criminal matter." The motion elaborated that any termination under Code § 16.1-283(E) could not take place until appellant had concluded any post-trial motions and exhausted the availability of appeal. The circuit court denied this motion.

---

[3] The circuit court entered a conviction order in appellant's criminal case on June 24, 2016 reciting the jury's verdicts and the court's judgment against appellant as well as continuing the case for sentencing.

- 4 -

Circuit Court Trial

The circuit court trial commenced on September 19, 2016 and continued until September 23, then recessed until October 31, 2016 when it became apparent that additional time would be necessary for the proceeding.

During the trial, DFS sought to introduce Ms. Castillo's testimony during the 2013 protective order hearing in the circuit court. Appellant objected on hearsay grounds, and DFS contended that the testimony was admissible under the former testimony exception codified at Virginia Rule of Evidence 2:804(b)(1). After hearing argument, the circuit court admitted the evidence stating, "I find that the requirements under 2:804(a)(1) [sic] have been met, and that . . . the matter in the transcript was family abuse, and certainly an issue in these cases is the issue of abuse within the family."

DFS also called appellant to testify during its case-in-chief, and questioned him regarding certain notes contained in his smartphone and labeled as privileged communications. Counsel for appellant objected on attorney-client privilege grounds, and the circuit court sustained the objection. DFS later questioned Mark McCaffrey, a detective with the Loudoun County Sheriff's Office, about how he obtained appellant's smartphone during the criminal investigation of appellant. McCaffrey testified that he gained possession of the phone while executing a search warrant of appellant's residence. Although appellant initially refused to provide the phone's passcode, he soon relented and revealed the code to McCaffrey, stating "See, I'm being cooperative." Based on this additional information, DFS sought once again to introduce the notes contained on appellant's phone. This time, the circuit court ruled the notes admissible and found that appellant waived any privilege by giving the passcode to the detective.

Dr. John Walker testified during DFS's case-in-chief as an expert in the field of human development focusing on youth with trauma and attachment issues. While describing the

children's bond with the Meekers, Walker testified that the children said "that [the Meekers' home] feels safe, that it feels like home." Appellant objected to this testimony on hearsay grounds, and DFS replied that the children's statement was admissible as the basis of his expert opinion regarding their bond with the Meekers. The circuit court overruled the objection and admitted the testimony for the limited purpose of demonstrating the basis for Walker's opinion regarding the bond.

DFS additionally presented evidence that it considered potential relative placements for the children. Immediately after the emergency removal in March 2014, DFS had considered placing the children with relatives, but all relatives known to DFS at that point were staying with appellant in appellant's residence. DFS later developed a genogram of the family and mailed letters to several of the children's relatives advising them that the children were in foster care and that DFS was considering relative placements. DFS set up visitations between the children and various relatives, and interviewed some of these relatives as candidates for placement. Among the relatives under consideration, several did not believe that appellant had murdered Ms. Castillo or gave testimony at the criminal trial that contradicted the children's testimony, others lacked appropriate housing or had health concerns, one relative had strained interactions with the children, and another indicated that she would be willing to be a placement for the first time during the circuit court trial. DFS personnel testified that because two of the four children in its custody were expected to, and actually did, testify against appellant in his criminal trial, it placed significant weight on relatives' attitudes toward appellant in assessing the appropriateness of relative placements.

At the conclusion of its case-in-chief, DFS moved to hold evidence open in order to introduce the final order from appellant's criminal case, including appellant's sentence. On the seventh day of trial, November 1, 2016, the circuit court granted DFS's motion over appellant's

objection. The circuit court entered the final order in appellant's criminal case on December 30, 2016, sentencing him to a term of life imprisonment plus sixteen years. The civil trial reconvened for an eighth day on April 25, 2017, during which DFS offered the sentencing order into evidence and rested. Appellant then moved to strike the evidence, which he renewed after presenting his case-in-chief and after DFS called rebuttal witnesses. In each of his motions, appellant contended that the evidence was insufficient to support a finding of abuse and neglect under Code § 16.1-228 and that DFS had not established by clear and convincing evidence that termination was appropriate under Code § 16.1-283(B), (C), or (E). The circuit court denied both motions.

On August 11, 2017, the circuit court ruled that the children had been abused and neglected and terminated appellant's parental rights pursuant to Code § 16.1-283(B) and (E)(ii). This appeal followed.

## II. STANDARD OF REVIEW

This Court employs a familiar standard of review on appeal of a circuit court's decision to terminate parental rights:

> When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."

Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)) (citations omitted). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Id. (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to

- 7 -

support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266, 616 S.E.2d 765, 769 (2005) (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795). Additionally, "the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Surles v. Mayer, 48 Va. App. 146, 177, 628 S.E.2d 563, 578 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).

## III. ANALYSIS

Appellant raises ten assignments of error on appeal:

1. The trial court erred in admitting prior irrelevant hearsay testimony under a non-existent Virginia Rule of Evidence (2:804(a)(1)) and, even if intending to apply Virginia Rule of Evidence 2:804(b)(1), the trial court erred in finding that the issue on which the testimony was offered in a protective order hearing pertaining to alleged acts against an adult was substantially similar to the current case involving alleged abuse and neglect of minor children and petitions for termination of parental rights over those children.

2. The trial court erred in finding that [appellant] had knowingly, voluntarily, and intentionally waived his attorney-client privilege on contents contained within his cellular phone that was seized pursuant to a search warrant.

3. The trial court erred in applying Virginia Rule of Evidence 2:703 by allowing an expert to testify regarding the substance of out-of-court hearsay statements used to support the basis for his opinion.

4. The trial court erred in granting the Department's Motion to Hold Evidence Open to Permit Introduction of Final Order from CR 26450, thereby granting a continuance during the Department's case-in-chief from November, 2016 to April, 2017.

5. The trial court erred in denying [appellant's] Motion to Strike and Renewed Motion to Strike the evidence pertaining to the

- 8 -

petitions to terminate his parental rights when no separate proceeding had been held and there had been no prior finding of abuse and neglect as required in Va. Code §§ 16.1-283(A) and 16.1-283(B).

6.   The trial court erred in finding that there was sufficient evidence to give consideration to relative placement as required in Virginia Code § 16.1-283 when the Department had not properly investigated any of the maternal or paternal relatives of the children and further erred by finding that none of the relatives offered for consideration met the requirements as defined in Virginia Code §§ 16.1-283(A) and 16.1-283(A)(A1).

7.   The trial court erred in finding sufficient evidence that each child had been abused or neglected as defined in Virginia Code § 16.1-228(1) by holding that there was substantial risk of impairment of mental functions when there was no evidence presented to support such a finding.

8.   The trial court erred in finding sufficient evidence that each child had been abused or neglected as defined in Virginia Code § 16.1-228(5) where the evidence did not prove that the children were left without parental care or guardianship and where [appellant's] involuntary absence was not unreasonable.

9.   The trial court erred in terminating Mr. Castillo's parental rights under Virginia Code § 16.1-283(B) where (i) there was insufficient evidence to support a finding of neglect or abuse such that it presented a serious and substantial threat to each child's life, health or development; (ii) the court improperly considered a finding of guilt in [appellant's] criminal matter; and (iii) the court indicated it considered rehabilitative efforts prior to the children's placement in foster care when no such evidence was presented.

10.  The trial court erred in terminating [appellant's] parental rights under Virginia Code § 16.1-283(E)(ii) finding [appellant] had been convicted of a criminal offense when there was no conviction in the case bearing Loudoun County Case Number CR 26450.

This Court will consider those assignments necessary for resolution of the appeal in turn.  See

Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1

(2009) ("[A]n appellate court decide[s] cases on the best and narrowest ground available."

(quoting Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*))).

A.  Former Testimony Exception

In his first assignment of error, appellant contends that the circuit court erred in admitting Ms. Castillo's prior sworn testimony during the 2013 protective order hearing into evidence. Because the testimony satisfies the requirements of Virginia Rule of Evidence 2:804(b)(1), this Court finds that the circuit court did not abuse its discretion in admitting it.[4]

Rule 2:804(b)(1) provides that, if the declarant is deceased or otherwise unavailable, his or her testimony is not excluded by the rule against hearsay if it meets the following criteria:

> Testimony given under oath or otherwise subject to penalties for perjury at a prior hearing, or in a deposition, if it is offered in reasonably accurate form and, if given in a different proceeding, the party against whom the evidence is now offered, or in a civil case a privy, was a party in that proceeding who examined the witness by direct examination or had the opportunity to cross-examine the witness, and the issue on which the testimony is offered is substantially the same in the two cases.

This rule codifies the former testimony exception, the elements of which the Supreme Court has explained as follows:

> [P]rior testimony is admissible if the court is satisfied:
>
> "(1)  that the party against whom the evidence is offered, or his privy, was a party on the former trial;
> (2)  that the issue is substantially the same in the two cases;
> (3)  that the witness who proposes to testify to the former evidence is able to state it with satisfactory correctness; and

---

[4] In overruling appellant's objection to the testimony, the circuit court indicated that Rule 2:804(a)(1), a rule that does not exist, provided its rule of decision.  Appellant relies on this statement to contend that the trial court erred in its evidentiary ruling.  Based on a review of the record, this Court is convinced that the circuit court simply misspoke in citing Rule 2:804(a)(1) and in fact based its ruling on Rule 2:804(b)(1).  See Coleman v. Coleman, No. 0633-11-2, 2011 Va. App. LEXIS 356, at *8 n.1 (Va. Ct. App. Nov. 22, 2011).

(4) that a sufficient reason is shown why the original witness is not produced."[5]

Gray v. Graham, 231 Va. 1, 5, 341 S.E.2d 153, 155 (1986) (quoting Director General v. Gordon, 134 Va. 381, 390, 114 S.E. 668, 670 (1922)).

The parties disagree only on whether the issue "is substantially the same in the two cases." Although this Court is "not bound by concessions of law by the parties," Epps v. Commonwealth, 47 Va. App. 687, 703, 626 S.E.2d 912, 919 (2006) (*en banc*), aff'd on other grounds, 273 Va. 410, 641 S.E.2d 77 (2007), the record in this case supports the conclusion that Ms. Castillo was unavailable, that she testified under oath in the former protective order proceeding, and that appellant was a party to the former proceeding.

The condition that the issues in both proceedings be "substantially the same" "does not require that 'all the issues . . . in the two proceedings must be the same, but at most that the issue on which the testimony was offered in the first suit must be the same as the issue upon which it is offered in the second.'" Gray, 231 Va. at 7, 341 S.E.2d at 156 (quoting McCormick on Evidence § 257 (3d ed. 1984)). In Gray, the witness' former trial testimony addressed the identity of a truck's driver, whereas in the subsequent civil trial the issue was whether the truck belonged to a certain company. Id. The Court held despite the distinction between the two issues, "sufficient similarity of issues in the two trials" existed to admit the testimony under the exception. Id. at 7-8, 341 S.E.2d at 157. Similarly, the former testimony at issue in Fisher v. Commonwealth, 217 Va. 808, 813-14, 232 S.E.2d 798, 802 (1977), took place during a preliminary hearing on a

---

[5] Virginia Rule of Evidence 2:102 states that the Virginia Rules of Evidence were adopted "to implement established principles under the common law and not to change any established case law rendered prior to the adoption of the Rules." Accordingly, the Supreme Court's holding regarding the elements of the former testimony exception remain binding on this Court. See Campos v. Commonwealth, 67 Va. App. 690, 706-08, 800 S.E.2d 174, 182-83 (2017) (discussing the scope of the Virginia Rules of Evidence); Creamer v. Commonwealth, 64 Va. App. 185, 199, 767 S.E.2d 226, 232 (2015) (holding Rule 2:102 requires that codified evidence rules must be interpreted in a manner giving effect to prior case law).

murder charge, but the prosecution sought to admit it in a related robbery trial. The Court held the testimony admissible under the exception because the two charges "grew out of one transaction" and the "evidence of the murder necessarily included the facts surrounding the robbery." Id. at 814, 232 S.E.2d at 802.

The issue for which Ms. Castillo's testimony was admitted at the protective hearing concerned whether appellant's abuse of Ms. Castillo and the children justified entry of a protective order. One of the issues before the circuit court in the instant case was whether appellant had abused and neglected the children. Appellant contends that Ms. Castillo's protective order testimony addressed only his abuses of her and thus relates to an issue other than his abuse of the children. This argument mischaracterizes both what constitutes child abuse and the contents of her testimony. The record indicates that Ms. Castillo's testimony at the protective order hearing detailed not only instances of appellant abusing her around the children—actions constituting psychological abuse of the children—but also appellant's physical abuses of the children themselves, including pushing then-five-year-old Z.C. hard enough to knock him to the ground and grabbing then-two-year-old B.C. by the arm and twisting until he cried. Appellant's argument that the testimony is inadmissible because it took place during a protective order hearing before DFS ever became involved is similarly misguided. As the Supreme Court held in Gray, the former testimony simply must relate to a sufficiently similar issue to that in the present proceeding—there is no requirement that the two proceedings be for the same purpose. See Gray, 231 Va. at 7-8, 341 S.E.2d at 157. Accordingly, this Court holds that the circuit court did not abuse its discretion in ruling that Ms. Castillo's former testimony was admissible under Rule 2:804(b)(1) because it concerned substantially the same issue in both cases.

B.  Waiver of Attorney-Client Privilege

In his second assignment of error, appellant contends the circuit court erred in finding that appellant waived the attorney-client privilege with respect to certain notes on his smartphone.  Assuming without deciding that the circuit court erred in finding a waiver occurred, such error was harmless, and this Court affirms the circuit court's ruling.

"No trial is perfect, and error will at times creep in."  Lavinder v. Commonwealth, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (*en banc*) (quoting Parsons v. Commonwealth, 154 Va. 832, 852, 152 S.E. 547, 554 (1930)).  "In Virginia, non-constitutional error is harmless 'when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'"  Id. at 1005-06, 407 S.E.2d at 911 (quoting Code § 8.01-678).  "An error does not affect a verdict if a reviewing court can conclude . . . that, had the error not occurred, the verdict would have been the same."  Id. at 1006, 407 S.E.2d at 911.

DFS introduced the notes as evidence that appellant violated the protective order.  The circuit court, however, did not mention the notes in its ruling, and ample other evidence existed in the record to support the conclusion that appellant had violated the protective order.  Among the evidence rendering the notes redundant was the protective order itself, which made clear that appellant was not entitled to contact with the children on Thursday, March 20, 2014.  Because the circuit court had sufficient evidence other than the notes at issue from which to conclude appellant violated the protective order and did not rely on the notes in its ruling, this Court holds that any error in finding that appellant waived the attorney-client privilege and admitting the notes was harmless.

C.  Hearsay as Basis of Expert Testimony

In his third assignment of error, appellant contends that the circuit court misapplied Virginia Rule of Evidence 2:703 by permitting DFS's expert, Dr. John Walker, to testify regarding hearsay statements by the children that formed the basis of his opinion regarding their bond with the Meekers.  Because Walker's testimony was appropriately admitted for the limited purpose of demonstrating the basis of his opinion, and its admission was harmless even if it constituted error, this Court affirms the circuit court's ruling.

Rule 2:703(a) permits expert witnesses in civil cases to base opinion testimony on any material normally relied upon by others in that field, even if that information is inadmissible in evidence.  This rule, derived from Code § 8.01-401.1, does not provide *carte blanche* for litigants to introduce otherwise inadmissible material in derogation of the ordinary rules of evidence.  Instead, the Supreme Court has ruled that Code § 8.01-401.1 "does not authorize the admission in evidence, upon the direct examination of an expert witness, of hearsay matters of opinion upon which the expert relied in reaching his own opinion."  Commonwealth v. Wynn, 277 Va. 92, 98, 671 S.E.2d 137, 140 (2009) (quoting McMunn v. Tatum, 237 Va. 558, 566, 379 S.E.2d 908, 912 (1989)).  Virginia precedent unequivocally holds that neither Rule 2:703(a) nor Code § 8.01-401.1 permits "the introduction of otherwise inadmissible hearsay evidence during the direct examination of an expert witness merely because the expert relied on the hearsay information in formulating an opinion."  Id. at 100, 671 S.E.2d at 141 (citing McMunn, 237 Va. at 565, 379 S.E.2d at 912).

These limitations, however, pertain only to disclosure on direct examination.  The statute recognizes that "[t]he expert may in any event be required to disclose the underlying facts or data on cross-examination."  Code § 8.01-401.1.  Additionally, the otherwise inadmissible hearsay statements forming the basis of an expert opinion may be admissible for a purpose other than

their truth, such as to demonstrate the basis of the expert's opinion. See Cartera v. Commonwealth, 219 Va. 516, 518, 248 S.E.2d 784, 786 (1978) (recognizing that otherwise inadmissible hearsay statements regarding a patient's physical and emotional condition may be admitted for the limited purpose of showing the basis of a physician's expert opinion); Campos, 67 Va. App. at 711, 800 S.E.2d at 185 (observing that the Cartera rule "is not technically an exception to the hearsay rule; instead, it sets forth a nonhearsay use for such statements:  to show the basis of [an expert's] opinion rather than for the statements' truth"); see also Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 13-8[d] (7th ed. 2012) (noting that Virginia precedent recognizes that otherwise inadmissible hearsay statements "may be admitted simply on the grounds that they are not being offered for their truth, but merely to show the basis of the expert's opinion").

In admitting Walker's testimony regarding the children's statements, the circuit court ruled:  "[The testimony] will only be accepted as to the basis for the opinion that he rendered about this bond."  The circuit court thus recognized that even on direct examination, otherwise inadmissible hearsay statements may enter evidence for a limited purpose other than their truth. Because its ruling was consistent with the accepted evidentiary principles articulated above, this Court holds that the circuit court did not abuse its discretion in admitting Walker's testimony regarding the children's statements for the sole purpose of demonstrating the basis of his expert opinion.

But even if the circuit court erred in admitting the statements as a basis for Walker's expert opinion, such error was harmless in light of the extensive other evidence indicating that remaining with the Meekers was in the children's best interests. See Lavinder, 12 Va. App. at 1005-06, 407 S.E.2d at 911.  Walker opined that, based on his observations of the children's interactions with the Meekers, the children had a "very strong" bond with the Meekers and "it

would be traumatic, without a doubt" for them to be removed from the Meekers' home. Thus, even absent Walker's testimony regarding the hearsay as a basis of his opinion, the trial court nevertheless had sufficient evidence with which to conclude that the children's interests would be best served by remaining with the Meekers.

### D. Consideration of Relative Placements

In his sixth assignment of error, appellant contends that the circuit court erred by finding that sufficient evidence existed to consider relative placements and that none of the children's relatives were suitable for placement. Because the circuit court had ample evidence with which to consider relative placements and appropriately determined that no possible relative placement would serve the children's best interests, this Court affirms its ruling.

Code § 16.1-283(A) requires a circuit court to "give a consideration to granting custody to relatives of the child, including grandparents." This Court has held that this provision obligates DFS "to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 217, 597 S.E.2d 214, 220 (2004) (quoting Logan, 13 Va. App. at 131, 409 S.E.2d at 465); see also Sauer v. Franklin Cty. Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994) ("[B]efore termination of parental rights by the court, the agency seeking termination has an affirmative duty to investigate all reasonable options for placement with immediate relatives."). Although mandatory, this obligation is limited. "We do not suggest that the Department has a duty in every case to investigate the home of every relative of the children, however remote, as a potential placement." Sauer, 18 Va. App. at 771, 446 S.E.2d at 642; see also Brown, 43 Va. App. at 217-18, 597 S.E.2d at 218 ("Nothing in the statute or case law suggests that DSS has an affirmative duty to conduct a home study."). As such, in this case, DFS

had a duty to provide the circuit court with enough information to make an informed determination of whether a relative placement is suitable, and the circuit court had a duty to give appropriate consideration to that information in making its determination.

Both DFS and the circuit court satisfied their obligations. The record indicates that DFS began researching the children's relatives shortly after the initial removal. DFS prepared a genogram, then mailed letters to the relatives seeking those interested in potentially becoming placements for the children. Many of these relatives had visitation with the children, which DFS supervised in order to consider the relatives' interactions with the children in assessing whether placement with those relatives would be appropriate. Further, DFS conducted interviews with relatives who seemed to be the most likely placement candidates. In the course of its investigation, DFS determined that all of the relatives it considered would be inappropriate for various reasons, including inadequate housing, medical conditions, strained interactions with the children, or holding beliefs regarding appellant inconsistent with what DFS believed to be the children's best interests. Ultimately, however, the circuit court had the responsibility of assessing this information and determining whether any relatives would be appropriate placements for the children. The record likewise indicates that the circuit court carefully considered the evidence of DFS's investigation into the relatives for placement, including trial testimony from several potential relatives, before concluding that none of the relatives would be suitable placements.

The circuit court thus had ample evidence to consider and in fact gave full consideration to that evidence. Because this Court defers to a lower court's judgment based on evidence heard *ore tenus* unless plainly wrong or without support, Logan, 13 Va. App. at 128, 409 S.E.2d at 463, it does not disturb the circuit court's ruling that no relatives were suitable placements.

E. Holding Evidence Open

In his fourth assignment of error, appellant contends that the circuit court abused its discretion by granting DFS's motion to hold evidence open. Because the circuit court's decision was within its discretion and not influenced by a mistake of law, this Court affirms the circuit court's ruling.

The Supreme Court has described appellate review of a circuit court's decision to hold evidence open as follows:

> "It is well settled that the reopening of a case and the admission of additional evidence after one or both parties have rested is a matter within the discretion of the trial court and its action will not be reviewed unless it affirmatively appears that this discretion has been abused or unless the admission of such additional evidence works surprise or injustice to the other party." . . . "The exigencies of each particular case go far in controlling the discretion of the court in this regard; although it has been said that the court should not reopen a case except for good reasons and on proper showing, it is not, on the other hand, justified in closing the case until all the evidence, offered in good faith and necessary to the ends of justice, has been heard."

Fink v. Higgins Gas & Oil Co., 203 Va. 86, 89-90, 122 S.E.2d 539, 541-42 (1961) (first quoting Laughlin v. Rose, Adm'x, 200 Va. 127, 129, 104 S.E.2d 782, 784 (1958), then quoting 53 Am. Jur. Trial § 123, p. 109). In exercising its discretion, "[t]he circuit court 'has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Reston Hosp. Ctr., LLC v. Remley, 63 Va. App. 755, 765, 763 S.E.2d 238, 243 (2014) (quoting Lawlor v. Commonwealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013)).

DFS first added Code § 16.1-283(E)(ii) as a ground for termination in an amended pleading before the JDR court shortly after a jury returned guilty verdicts on all charges in appellant's criminal trial. On appeal before the circuit court, appellant moved to stay or continue the case pending entry of a final order in the criminal case against him, which DFS opposed and

the circuit court denied without elaboration.  But when DFS moved to hold evidence open for admission of the final criminal order, the circuit court granted its motion, finding admission of the order to be "central to the just outcome of this matter."  The circuit court, perhaps tacitly recognizing its opposite rulings on the issue during the course of litigation, acknowledged in its oral ruling the important considerations favoring each side's positions:

> Obviously, the tension in this case, as was pointed out in counsel's positions, is between minding the statutory mandates . . . for docketing priority and adjudication of these type of matters, that is, the termination of residual parental rights, to alleviate children languishing in foster care, and that's on the one hand, and, on the other hand, the Court, having full information upon which to determine the issues before it.  And this issue here, those things . . . point against each other.  A motion to hold open the evidence potentially allows both of those ends to be served in that the trial is commenced, so unnecessary delay in commencing adjudication and hearing evidence has been avoided. . . . To hold this case open, in the Court's view, allows the whole case to be presented and to advance the ends of justice for the issues that pend in this case.

The circuit court thus recognized that the statutory structure for termination cases codifies the public policy of efficient resolution,[6] but determined that, on the specific facts of this case, it would not be "justified in closing the case until all the evidence, offered in good faith and necessary to the ends of justice, ha[d] been heard."  Fink, 203 Va. at 90, 122 S.E.2d at 542 (quoting 53 Am. Jur. Trial § 123, p. 109).

---

[6] This Court has frequently acknowledged that "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities."  Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).  One statutory provision representative of this policy is Code § 16.1-296(D), which provides that appeals to circuit court of cases involving termination of parental rights must receive "a hearing on the merits of the case within 90 days of the perfecting of the appeal."  This Court has held that this expedited docketing provision is procedural and directory in nature, not mandatory and jurisdictional.  Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 80-81, 764 S.E.2d 724, 729 (2014).  As such, this Court finds unpersuasive appellant's contention that the circuit court violated Code § 16.1-296(D) by holding evidence open.

Although the circuit court could have, and some other courts possibly would have, refused to hold open the evidence, this Court will not reverse a lower court's discretionary decision unless "'reasonable jurists could not differ' as to the proper decision." Reston Hosp. Ctr., 63 Va. App. at 765, 763 S.E.2d at 243 (quoting Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008)). A criminal judgment in the Commonwealth's favor would have been, and eventually proved to be, dispositive on the issue of terminating father's parental rights. Had the circuit court elected to proceed without waiting for the final criminal order, it likely would have conducted a subsequent termination hearing addressing the alternate ground for termination once the final order became available from the criminal action. The circuit court weighed the need for prompt resolution and stability for the children against the need for greater certainty that its ruling would be correct. It decided that a few months' delay for evidence that would provide that increased certainty was better for the children than going on to reach a decision it perceived would be more vulnerable to reversal on appeal, thus risking potential years of uncertainty for the children. On the record before it, this Court cannot say that the circuit court abused its discretion in making this determination. Accordingly, this Court holds that the circuit court did not err in holding the evidence open for entry of the final criminal order against appellant.

F. Need for Separate Proceedings and Sufficiency of the Evidence for Termination

In his fifth assignment of error, appellant contends that the circuit court erred in denying his motions to strike the evidence when the trial court did not hold separate proceedings for the appeal of the dispositional orders and the appeal of the termination orders. In his tenth assignment of error, appellant further argues that the circuit court erred by terminating his residual parental rights to the children under Code § 16.1-283(E)(ii). Because the circuit court's decision to hold a combined hearing on both issues, if error, was nevertheless harmless given

that the evidence overwhelmingly supported a termination finding under Code § 16.1-283(E)(ii), this Court affirms its rulings.

Code § 16.1-283(A) provides, in relevant part, that "[t]he residual parental rights of a parent or parents may be terminated by the court as hereinafter provided in a *separate proceedin*g if the petition specifically requests such relief." (Emphasis added). This Court has previously held that the term "separate proceeding" means "a hearing separate and distinct from an abuse and neglect adjudication, entrustment disposition, or foster care placement and review" and requires the filing of a separate petition for termination "so that proper notice is given." Stanley v. Fairfax Cty. Dep't of Soc. Servs., 10 Va. App. 596, 601-02, 395 S.E.2d 199, 202 (1990). This additional procedural requirement recognizes "the potentially drastic consequences of a termination proceeding" and ensures that "the termination issue is not confused with other issues which may have been before the court previously." Id. at 602, 395 S.E.2d at 202.

This Court has held in an unpublished opinion that a circuit court errs by conducting a single trial on appeal of petitions alleging abuse and neglect alongside petitions seeking termination of parental rights. See Cogan v. Fairfax Cty. Dep't of Human Dev., No. 0019-93-4, 1994 Va. App. LEXIS 87, at *2-3 (Va. Ct. App. Feb. 22, 1994).[7] "In view of the parental interest at stake in [termination] proceedings, 'due process requires the trial courts to comply strictly with the statutory scheme for disposition of child custody cases.'" Strong v. Hampton Dep't of Soc. Servs., 45 Va. App. 317, 321, 610 S.E.2d 873, 875 (2005) (quoting Rader v. Montgomery Cty. Dep't of Soc. Servs., 5 Va. App. 523, 528, 365 S.E.2d 234, 237 (1988)).

But even if the circuit court erred by not holding separate proceedings, this Court need not necessarily reverse its termination decision. "Error which does not injuriously affect the

---

[7] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Otey v. Commonwealth, 61 Va. App. 346, 350 n.3, 735 S.E.2d 255, 257 n.3 (2012); see also Rule 5A:1(f).

interest of the party complaining is not reversible." Fields v. Dinwiddie Cty. Dep't of Soc.

Servs., 46 Va. App. 1, 9, 614 S.E.2d 656, 660 (2005) (quoting Jenkins v. Winchester Dep't of

Soc. Servs., 12 Va. App. 1178, 1186, 409 S.E.2d 16, 21 (1991)); see also Code § 8.01-678

("When it plainly appears from the record and the evidence given at the trial that the parties have

had a fair trial on the merits and substantial justice has been reached, no judgment shall be

arrested or reversed . . . [f]or any other defect, imperfection, or omission in the record, or for any

error committed on the trial.").

In this case, the circuit court's error was harmless because its termination of appellant's

parental rights pursuant to Code § 16.1-283(E)(ii) was appropriate without regard to the abuse

and neglect inquiry that would have been the subject of any separate proceeding. That provision

states:

> The residual parental rights of a parent or parents of a child who is
> in the custody of a local board or licensed child-placing agency
> may be terminated by the court if the court finds, based upon clear
> and convincing evidence, that it is in the best interests of the child
> and that . . . (ii) the parent has been convicted of an offense under
> the laws of the Commonwealth . . . that constitutes murder . . . if
> the victim of the offense was . . . the other parent of the child.

Unlike Code § 16.1-283(B), the other ground upon which the circuit court terminated appellant's

residual parental rights, Code § 16.1-283(E)(ii) requires no predicate finding that the parent

abused and neglected the children. The circuit court had before it a final criminal order

convicting appellant of the murder of Ms. Castillo, biological mother of three of the children and

adoptive mother of the fourth, which it held was a conviction within the meaning of Code

§ 16.1-283(E)(ii).[8] The circuit court further held that, in light of the speculative possibility of

---

[8] This Court has held that a final criminal order meets the "has been convicted" element of the Code § 16.1-283(E) subsections regardless of whether that order has been appealed. M.G. v. Albemarle Cty. Dep't of Soc. Servs., 41 Va. App. 170, 186-87, 583 S.E.2d 761, 769 (2003) ("[W]hether a person has been convicted of [murder] as that term is used in the statute depends upon whether a final order has been entered by the trial court and does not depend on whether

appellant maintaining a relationship with the children from prison and the children's need for stable parental figures, the evidence supported a finding by clear and convincing evidence that termination of appellant's parental rights was in the best interests of the children. These findings, amply supported by the evidence in the record, justified termination pursuant to Code § 16.1-283(E)(ii). Because termination under that provision does not require a finding of abuse and neglect, the procedural requirements for separating termination proceedings from hearings on other issues are not significant in this case.

Accordingly, to the extent that the circuit court may have erred by not holding separate proceedings for the termination issues, such error was harmless because appellant received a fair trial in which overwhelming evidence was presented supporting termination of his residual parental rights to the children under Code § 16.1-283(E)(ii).[9]

## IV. CONCLUSION

The circuit court did not err in its evidentiary rulings, and its ruling regarding appellant's waiver of attorney-client privilege was harmless in light of the other evidence against appellant and the inconsequential probative value of the challenged notes. It gave full consideration to

___

that final order has been appealed. Had the legislature wished to provide that [murder] conviction could not be used as a predicate for the termination of parental rights unless all appeals had been exhausted, it could have said so in the statute. The legislature's recognition of the need for a reasonably swift resolution in foster care and termination cases further supports the conclusion that the legislature did not intend for a court considering such a petition to have to await the outcome of an appeal of a conviction serving as the predicate for the termination.").

[9] When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment. See Fields, 46 Va. App. at 8, 614 S.E.2d at 659 (affirming termination of parental rights under one subsection of Code § 16.1-283 and declining to address termination under any other subsection the lower court relied on); see also Kilby, 55 Va. App. at 108 n.1, 684 S.E.2d at 220 n.1 ("[A]n appellate court decide[s] cases on the best and narrowest ground available." (quoting Luginbyhl, 48 Va. App. at 64, 628 S.E.2d at 77)). Accordingly, this Court does not consider appellant's seventh, eighth, and ninth assignments of error concerning the circuit court's findings of abuse and neglect and termination under Code § 16.1-283(B).

possible relative placements for the children, but found based on ample evidence that no relative was appropriate. On the specific facts of this case, the circuit court's decision to hold evidence open for admission of the final criminal order was not an abuse of discretion. The final conviction order, in light of the other evidence presented, provided sufficient grounds for the circuit court to terminate appellant's parental rights under Code § 16.1-283(E)(ii) and rendered harmless its decision to combine all the JDR court appeals into one hearing. Accordingly, this Court affirms the circuit court's rulings in this case.

<u>Affirmed.</u>