UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Russell and Senior Judge Frank


JAMIE PAUL DESPER

MEMORANDUM OPINION[*]

v.      Record No. 0634-18-3      PER CURIAM
AUGUST 7, 2018

SHENANDOAH VALLEY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Victor V. Ludwig, Judge

(Avery B. Cousins, III; Cousins Law Offices, on brief), for
appellant. Appellant submitting on brief.

(James B. Glick; Paul Allen Titus, Guardian *ad litem* for the minor
child; Vellines, Glick & Whitesell, P.C., on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Jamie Paul Desper (father) appeals orders of the circuit court terminating his residual

parental rights to his minor child, C.F., changing the goal of the permanency care plan from "return

home"[1] to adoption, and denying his mother's (grandmother) motion to intervene and petition for

custody. Father argues that the circuit court committed procedural errors during the proceedings

and erred in finding that the Shenandoah Valley Department of Social Services (DSS) had complied

with its statutory duty to investigate placing C.F. in the care of a relative rather than terminate his

residual parental rights. Upon reviewing the limited record presented and briefs of the parties, we

affirm the decision of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Father was incarcerated during the proceedings, with a projected release date in July
2026, so the original "return home" goal pertained to C.F.'s mother.

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 303, 746 S.E.2d 509, 513 (2013).

C.F. and her half-brothers were removed from the custody of her mother and stepfather on November 6, 2015. DSS had been working with C.F.'s family since 2012 due to concerns over homelessness, alleged drug use, ongoing criminal activity, physical abuse, and inadequate hygiene. At the time of removal, the family was homeless and residing with a friend in a house that "smelled of animal waste." C.F. and her half-brothers were placed together in a therapeutic foster home, which allowed C.F. to maintain a secure bond with her siblings. C.F. was below grade level in all subjects because the family's chronic homelessness had resulted in repeated changes in schools and frequent truancy. An emergency removal order was entered on November 6, 2015, and a preliminary removal order followed on November 10, 2015. At an adjudicatory hearing on December 9, 2015, C.F. was found to be abused or neglected.

From the outset, DSS attempted to locate a relative who would be a suitable placement for C.F. As noted, father could not take custody of C.F. because he was incarcerated, with a projected release date in July 2026. Nevertheless, DSS contacted him to identify other suitable relatives. Father advised DSS that he had not been an active participant in C.F.'s life, and had not seen C.F., who was twelve years old at the time of the *ore tenus* hearing, since she was

---

[2] The facts and circumstances leading to C.F.'s removal from the care of her mother and step-father were not disputed, and father states on brief to this Court that he conceded below that his "sole argument" concerned DSS's alleged failure to fully and properly consider grandmother as a relative placement for C.F. Father has not assigned error to the circuit court's findings that clear and convincing evidence supported terminating his residual parental rights under Code §§ 16.1-283(B), (C), and (E)(iii) or that a preponderance of the evidence supported changing the permanency plan goal to adoption. Thus, we recite the facts necessary to place the matters presented on appeal in context.

approximately eighteen months old, but he provided contact information for grandmother. By letter dated January 27, 2016, and received on February 3, 2016, DSS advised grandmother that C.F. had been removed from her legal guardian and placed in DSS custody; it inquired whether grandmother or another relative wanted to be considered as a placement option for C.F. The letter also advised that:

> In Virginia, the planning and service delivery process for children in foster care focuses on supporting parents in having their children safely returned to their care. If a child cannot be returned to his or her parent safely, efforts are then made to arrange for a relative to adopt or assume custody of the child. If these efforts fail, children are most often placed for adoption with a non-relative. In some cases, children remain in the foster care system.

The letter closed by asking grandmother to contact DSS "as soon as possible" and offered to provide grandmother with information concerning C.F.'s circumstances.

On March 18, 2016, DSS sent grandmother a home study packet, which included all the forms necessary for DSS to conduct its investigation. DSS received no response from grandmother. On May 24, 2016, DSS sent grandmother another letter, which she received on May 26, 2016, advising grandmother that DSS had not received any information from her and inquiring whether she was still interested in being considered as a placement option for C.F. The May letter advised grandmother that there was a court date scheduled for October 4, 2016, and that the "Home study and approval/licensure process will need to be completed and sufficient progress made in counseling as well as in developing an appropriate relationship" with C.F. before the scheduled court date for DSS to recommend relative placement for C.F. in the event reunification with her mother was no longer an appropriate goal. DSS requested that grandmother return the required forms by June 15, 2016, if she was interested in having C.F. placed with her. On July 28, 2016, DSS sent grandmother another home study packet. Grandmother never returned the forms.

By petitions filed on September 30, 2016, DSS moved to change the goal of the foster care plan from "return home" to "adoption." In the Foster Care Service Plan Review and the Foster Care Service Plan Report, DSS explained the requested change in goal from return home to adoption by documenting its unsuccessful efforts to rehabilitate mother and its attempts to find a suitable relative placement. DSS reported that it was unable to approve grandmother "as a placement resource" because of her "lack of participation and cooperation with the home study process." DSS opined that C.F. (and her siblings) needed to remain in foster care to ensure their continued safety and well-being. The report also noted that C.F. had remained with the same foster care family throughout the proceedings with her siblings, who provided emotional support for C.F. C.F. and her siblings all attended the same elementary school, they rode the bus together, and they participated in community and church activities together. C.F. had "developed a healthy relationship and secure bond with her foster/adoptive parents as well as their extended family."

Following the review hearing on October 4, 2016, the Augusta County Juvenile and Domestic Relations District Court (JDR court) entered a Permanency Planning Order approving a goal of adoption, continuing C.F. in DSS custody, and directing DSS to petition for termination of father's parental rights. The order noted that "Both parents object to entry of this Order but stipulated that facts were sufficient for entry." On October 7, 2016, DSS filed the required petition for termination of father's residual parental rights, which the JDR court granted by order of April 25, 2017. Father timely noted appeals to both JDR court orders.

On July 14, 2017, while father's appeals were pending in the circuit court, grandmother moved to intervene. Grandmother averred that she believed her home was an acceptable residence for C.F. and that she knew of "no impediment" to her being qualified as a caregiver for C.F. Grandmother prayed for the opportunity to present "the facts and argument" that she

believed would support her request to be C.F.'s legal custodian.  Without objection from any party, the circuit court granted grandmother leave to intervene.

The parties appeared for an *ore tenus* hearing on October 30, 2017.  Grandmother and DSS presented testimony and evidence.  After considering the evidence and argument of counsel, the circuit court, by order of November 20, 2017, granted DSS's motion to strike, dismissed grandmother's motion to intervene, and denied her request for custody and visitation of C.F.

With respect to the foster care plan with the goal of adoption, the circuit court found that based upon the facts contained in the foster care plan and the testimony, "reasonable efforts have been made to reunite that child with his or her parents," "[r]easonable efforts to reunite the child with his or her parents are not required pursuant to Virginia Code § 16.1-281(B)," and the permanency goal of adoption is achievable.  Regarding the termination of father's parental rights, the circuit court found that DSS had met its burden of proving by clear and convincing evidence the requirements of Code §§ 16.1-283(B), (C)(1), (C)(2), and (E)(iii) and that termination of father's parental rights was in the best interests of the child.  The circuit court entered orders terminating father's residual parental rights and approving the permanency plan goal of adoption on January 26, 2018.  Father timely noted his appeal.[3]

### ANALYSIS

"On appeal, we presume that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."  Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 211, 597 S.E.2d 214, 217 (2004).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to

---

[3] Grandmother did not appeal any of the circuit court's orders.

support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Before addressing the merits of father's appeal, we first note the limited record presented to this Court and the impact that circumstance has on our review. The record does not contain a transcript or written statement of facts. See Rule 5A:8(b)(4)(ii). Although the record documents an *ore tenus* hearing on October 30, 2017, it does not include any incidents of trial, such as objections, arguments on the motion to strike, and stipulations. The record does contain an opinion letter from the circuit court. We conclude, however, that the letter opinion is not properly part of the record.

The circuit court entered final orders on the permanency plan and termination of father's parental rights on January 26, 2018. Father filed notices of appeal on February 9 and 12, 2018. The circuit court's letter opinion is dated March 15, 2018—more than twenty-one days after entry of the final orders and more than thirty days after father noted his appeal. Under this Court's holding in Minor v. Commonwealth, 66 Va. App. 728, 740, 791 S.E.2d 757, 762 (2016), the circuit court no longer had jurisdiction to enter the letter opinion on March 15, 2018. Although the parties have treated the letter opinion as a *de facto* statement of facts, it does not purport to have been presented or filed under Rule 5A:8(c).[4] Accordingly, it is not properly part of the record on appeal, and we do not consider it. Rule 1:1; Minor, 66 Va. App. at 740, 791 S.E.2d at 762.

---

[4] We note, however, that even if the letter opinion were properly before us, it does not include the objections and arguments the parties presented at the *ore tenus* hearing.

Although father presents multiple assignments of error, the gravamen of his complaint is that DSS did not meet its statutory obligation under Code § 16.1-283(A) to determine whether grandmother was a "willing and suitable" relative placement for C.F. That is, father does not contest the sufficiency of DSS's evidence; he instead challenges the process employed. Given the limited record before this Court and father's stipulations below that the evidence was otherwise sufficient to support the circuit court's findings concerning termination and adoption, we confine our review to the question of whether there was sufficient evidence for the circuit court to "properly determine whether there [were] relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465. See also Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 560-61, 811 S.E.2d 835, 842 (2018) (considering only "those assignments necessary for resolution of the appeal").[5]

"The statutory scheme for the constitutionally valid termination of residual parental rights in this Commonwealth is primarily embodied in Code § 16.1-283." Layne v. Layne, 61 Va. App. 32, 36, 733 S.E.2d 139, 141 (2012) (quoting Rader v. Montgomery Cty Dep't. Soc. Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235-36 (1988)). "That scheme provides detailed procedures designed to protect the rights of the parents and their child. These procedures must be strictly followed before the courts are permitted to sever the natural and legal bond between parent and child." Id. at 36-37, 733 S.E.2d at 141. Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). "This Court has held that this provision obligates [DSS] 'to produce sufficient evidence so that the court may properly determine whether there are relatives willing and

---

[5] Thus, assuming without deciding that father has standing to raise these issues, we do not address father's assignments of error concerning entry of the November 20, 2017 order or disposition of grandmother's motion to intervene. Rule 5A:8(b)(4)(ii); Rule 5A:18.

suitable to take custody of the child, and to consider such relatives in comparison to other placement options.'" Castillo, 68 Va. App. at 567, 811 S.E.2d at 845 (quoting Brown, 43 Va. App. at 217, 597 S.E.2d at 220). Accord Hawthorne v. Smyth Cty. Dep't of Soc. Servs., 33 Va. App. 130, 136, 531 S.E.2d 639, 642 (2000); Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

"Although mandatory, this obligation is limited." Castillo, 68 Va. App. at 567, 811 S.E.2d at 845. We have never "suggest[ed] that the Department has a duty in every case to investigate the home of every relative of the children, however remote, as a potential placement." Sauer v. Franklin Cty. Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 642 (1994). Instead, our precedent establishes that the statutory prerequisite is satisfied when the relative testifies before the circuit court, so that it may consider the suitability of placing the child with that relative, as compared with other placement options. See Castillo, 68 Va. App. at 568, 811 S.E.2d at 845-46 (trial testimony of "several relatives" and evidence of Department's investigation provided circuit court with "ample evidence" to consider relative placements); Brown, 43 Va. App. at 218, 597 S.E.2d at 220 (statute satisfied where grandmother "testified at the hearing and informed the court of her 'suitability and willingness' to take [minor] into her custody); Hawthorne, 33 Va. App. at 139, 531 S.E.2d at 644 (statute satisfied where the trial court heard testimony of father's aunt concerning her willingness and suitability for placement before it ordered the termination of his parental rights).

Here, the circuit court heard evidence *ore tenus* and determined that grandmother was not a suitable placement for C.F. as compared to other placement options. The record before this Court supports the circuit court's finding. DSS worked with both mother and father to identify a suitable relative placement. It contacted grandmother early in the process. However, grandmother did not respond to DSS's repeated requests that she complete the home study documents so that it could conduct the necessary investigation. Despite being advised of specific

deadlines and court dates, grandmother took no action until after the JDR court had terminated father's residual parental rights and the matter was on appeal in the circuit court.

At the time of the circuit court *ore tenus* hearing, C.F. had been in foster care for nearly two years. C.F. had been with the same therapeutic foster care family for that entire period with her siblings. Although her initial adjustment to the removal had been difficult, by the time of the *ore tenus* hearing C.F. had "developed a healthy relationship and secure bond with her foster/adoptive parents as well as their extended family." Meanwhile, as far as can be gleaned from the limited record before this Court, grandmother still had not completed the home study paperwork or taken any steps to forge a relationship with C.F. That failure to act was particularly compelling considering that father had advised DSS that neither he nor his family had been an active part of C.F.'s life since she was eighteen months old.

Moreover, the circuit court was required to consider placement with grandmother "in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465. Compared to grandmother's passive indifference, the circuit court had evidence that C.F. was in a stable and secure environment with her siblings, with whom she had a close bond. That bond provided C.F. with much-needed "emotional support." While grandmother did nothing to "develop any relationship" with C.F., C.F. had developed "a healthy relationship" with her foster parents. Significantly, grandmother is not related to C.F.'s siblings, so C.F.'s placement with grandmother would have undermined the crucial "emotional support" C.F. derived from her close bond to them. In Brown, we recognized that the circuit court could consider the effect of separating a child from a sibling in making its comparative determination concerning the "suitability" of a relative placement. Brown, 43 Va. App. at 218 & n.6, 597 S.E.2d at 220 & n.6 (noting that "placing [the child] with [his grandmother] would separate him from his sister, . . . 'the only constant in [the child's] whole existence'").

In sum, we agree with father that DSS had a duty to investigate placement of C.F. with relatives *before* the circuit court could terminate father's parental rights. Hawthorne, 33 Va. App. at 137, 531 S.E.2d at 643. Consistent with Castillo, Brown, and Hawthorne, we hold that that duty was satisfied in this case when grandmother testified at the *ore tenus* hearing.[6] Grandmother's testimony and evidence, along with the testimony and evidence DSS presented, supplied the circuit court with the necessary evidence to "determine whether there [were] relatives willing and suitable to take custody of [C.F.], and to consider such relatives in comparison with other placement options." Hawthorne, 33 Va. App. at 138, 531 S.E.2d at 643 (quoting Logan, 13 Va. App. at 131, 409 S.E.2d at 466).

Moreover, as Code § 16.1-283(A) requires, the circuit court heard and considered the suitability of placing C.F. with grandmother before it ordered the termination of father's residual parental rights. Brown, 43 Va. App. at 218-19, 597 S.E.2d at 220-21. "Because this Court defers to a lower court's judgment based on evidence heard *ore tenus* unless plainly wrong or without support, Logan, 13 Va. App. at 128, 409 S.E.2d at 463, it does not disturb the circuit court's ruling that no relatives were suitable placements." Castillo, 68 Va. App. at 568, 811 S.E.2d at 845-46.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.

---

[6] Furthermore, grandmother's prolonged failure to act undermines the clear statutory mandate that cases of this nature be resolved as expeditiously as possible. Cf. Tackett, 62 Va. App. at 322, 746 S.E.2d at 522 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)) ("It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities.").