COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Alston and Senior Judge Annunziata

UNPUBLISHED

RAYMOND LEROY WELLER

v.      Record No. 2020-18-2

SPOTSYLVANIA COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
JUNE 11, 2019

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

(Brenda Lee Greene; Strentz & Greene, PLC, on brief), for
appellant.

(Robert F. Beard; Cynthia C. Edwards; Carolyn S. Seklii, Guardian
*ad litem* for the minor children; Vanderpool, Frostick & Nishanian,
P.C.; Sullivan & Seklii, PLC, on brief), for appellee.


Raymond Leroy Weller (father) appeals the orders terminating his parental rights to his

children and approving the goal of adoption.  Father argues that the circuit court erred by

(1) "basing its decision on facts and circumstances that occurred in a prior foster care placement that

also involved the mother, not a party to this case;" (2) finding that it was in the children's best

interests to terminate father's parental rights; and (3) finding that father was unable, within a

reasonable period of time, to remedy substantially the conditions that led to or required foster care

placement.  Upon reviewing the record and briefs of the parties, we conclude that this appeal is

without merit.  Accordingly, we summarily affirm the decision of the circuit court.  See Rule

5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

The Spotsylvania County Department of Social Services (the Department) first became involved with the family on August 11, 2015, after the Spotsylvania County Sheriff's Office conducted a drug raid at father's home. Father's two children, who were six and nine years old at the time, were home during the raid. The police seized pills, heroin, drug paraphernalia, and cash. Father was arrested and later pleaded guilty to possession with the intent to distribute a Schedule I/II controlled substance as an accommodation and felony child abuse. The children's mother, Heidi Lambert, was incarcerated for a probation violation. Since there were no appropriate relatives, the children were placed in foster care.

On September 4, 2015, the Spotsylvania County Juvenile and Domestic Relations District Court (the JDR court) adjudicated that the children were abused or neglected. On October 2, 2015, the JDR court entered dispositional orders for the children. The Department provided father with numerous services, which he completed, and on January 6, 2017, the JDR court approved the foster care goal of return home.

On July 27, 2017, the Department again became involved with the family after there was another drug raid at father's home. The police seized heroin, fentanyl, and drug paraphernalia.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

Father admitted that he purchased the heroin in Washington D.C. and that he had used "a small amount" of it before the police entered the house. Father also told the police that he sold heroin to support his addiction. Father was arrested and later pleaded no contest to possession with intent to distribute a Schedule I/II controlled substance.

As before, the children were home during the raid. The Department placed the children with their paternal grandmother, who was unable to care for the children for more than a few days. The Department investigated other individuals and determined that there were no other possible relative placements, so the children were placed in foster care on August 4, 2017.

On October 6, 2017, the JDR court adjudicated that the children were abused or neglected. On the same date, the JDR court also entered the dispositional orders.

On November 16, 2017, father was released from jail and contacted the Department. Father refused to provide the Department with his address or phone number, but on November 28, 2017, he asked to visit with the children. The Department arranged for father to visit with the children, and overall the "visitations went well."

The Department had offered "extensive services" to father when the children were in foster care previously. Those services included a substance abuse evaluation, family reunification services, visitation, and referrals to a substance abuse program, parenting class, and the Village Fathers program. When the children entered foster care for the second time, the Department's goal was relative placement, with a concurrent goal of adoption. During the children's second foster care placement, father did not participate in, or request, any new services, other than visitation. On January 10, 2018, father was incarcerated again and remained incarcerated until August 2018.

On May 4, 2018, the JDR court entered orders terminating father's parental rights and approving the foster care goal of adoption. Father appealed to the circuit court.

After father's release from incarceration in August 2018, he contacted the Department and requested visitation. Since the JDR court had terminated his parental rights, the Department did not arrange for visitation between father and the children.

On September 27, 2018, the parties appeared before the circuit court. The circuit court first spoke with the children and their guardian *ad litem* in chambers. The children, whom the circuit court found to be "sufficiently mature, intelligent, and articulate to express to the court their experiences and preferences," informed the court of their desire to be adopted by their foster parents. The children enjoyed their current "positive, safe relationship and living situation" with their foster parents. The children described their chaotic and dangerous life with father. The children knew that drugs were in father's home, and his home did not always have electricity or food. After the *in camera* proceeding, father moved to continue the termination hearing, which the circuit court granted.

The parties appeared before the circuit court again on November 13, 2018. At that hearing, the Department informed the court that it was not aware of any services in which father had participated since August 2017, when the children entered foster care the second time. The Department explained that there were no other services that it could offer father.

The Department presented evidence that the children were "doing very well" in foster care and had been living with the same family since August 4, 2017. They were on the honor roll at school and involved in extracurricular activities. The children had bonded with their foster parents and were happy. The foster parents were willing and able to adopt the children.

Father testified that he did not know that he could ask for services after the children were returned to his care in January 2017, nor did he know who to ask for services. Father admitted that he recently had lost his home and did not have a car. His driver's license was suspended,

and although he was working, he did not earn very much money. He asked the circuit court for additional time, perhaps six months, to "get back on his feet."

After hearing the evidence and argument, the circuit court took the matter under advisement and subsequently issued a letter opinion on November 16, 2018. The circuit court terminated father's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption.[2] On November 30, 2018, the circuit court entered its final orders. This appeal followed.

## ANALYSIS

### *Prior foster care placement*

Father argues that the circuit court erred by "basing its decision on facts and circumstances that occurred in a prior foster care placement that also involved the mother, not a party to this case." Although father repeated his first assignment of error in the conclusion section of his opening brief, he provided no argument or authorities that addressed the issue; therefore, this Court will not consider it. See Muhammad v. Commonwealth, 269 Va. 451, 478 (2005) ("Failure to adequately brief an assignment of error is considered a waiver.").

### *Termination of parental rights*

Father argues that the circuit court erred by finding that the evidence was sufficient to terminate his parental rights. He contends that the termination of his parental rights was not in the best interests of the children and that he had substantially corrected the conditions that led to the children's foster care placement. Father emphasizes that he was no longer incarcerated, had no pending criminal charges, was working, and was clean of all substances.

---

[2] Mother's parental rights were terminated after she signed a permanent entrustment agreement.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated father's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005).

The Department removed the children from father's care in 2015 and 2017, after police conducted drug raids at his home. After the first incident in 2015, the Department provided "exhaustive services to father," who successfully completed the Department's requirements so that the children could be returned to his care in January 2017. The circuit court found that father "failed to take advantage of the post reunification recommendations" and resumed his drug activities, which led to the children's removal in the summer of 2017. The circuit court

further found that the children had been exposed to father's "unlawful and dangerous criminal activity" and were present during both of the police raids. The circuit court noted that the children were aware that father was using and distributing drugs and that there were drugs and paraphernalia throughout the house. The circuit court held that the children's "relationship with their father was irreparably damaged."

In addition, the circuit court found that father was "still not in a position to resume his parental role." At the time of the circuit court hearing, father did not have a home for the children, and although he was working, he admitted that he was not earning much money. He had no car, and his driver's license was suspended. Father conceded that he needed additional time to be in a position to care for the children.

The children, however, had been in foster care for approximately thirty out of thirty-nine months. They were doing "extremely well" in their foster home, "where they [felt] safe, [were] well cared for and properly fed." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Based on the totality of the circumstances, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).[3]

---

[3] In addition to his other arguments, father asserts that the circuit court erred in terminating his parental rights under Code § 16.1-283(B); however, the circuit court terminated father's parental rights under Code § 16.1-283(C)(2), not (B). Therefore, this Court will not consider father's arguments relating to Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>