COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Clements

ANGELA DARR

v.      Record No. 0803-19-2

SPOTSYLVANIA COUNTY DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
FEBRUARY 11, 2020

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

(Sabina Nunn Wighington, on brief), for appellant.

(Kate O'Leary; Carolyn S. Seklii, Guardian *ad litem* for the minor
children; Sands Anderson PC; Sullivan & Seklii, PLC, on brief), for
appellee.

Angela Darr (mother) appeals the orders terminating her parental rights to her children.

Mother argues that the circuit court erred in terminating her parental rights under Code

§ 16.1-283(C)(2) and finding that termination was in the children's best interests. Upon reviewing

the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly,

we summarily affirm the decision of the circuit court. See Rule 5A:27.

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother and Timothy Darr (father) are the biological parents to five children, four of whom are the subject of this appeal.[2] The Spotsylvania County Department of Social Services (the Department) first became involved with the family in April 2016, after receiving a call for neglect alleging lack of food, lack of supervision, and inadequate hygiene. The family of seven was living in one room at a motel, and mother was unemployed. The children had hygiene and behavioral problems. In June 2016, one of the children had a second-degree sunburn, and mother dismissed the problem saying that the child did not listen and would not get out of the pool. Another child was getting into fights on the school bus, having trouble in school, and destroying property. A third child took toys from a stranger in the motel's parking lot, but mother was unaware that the child had left the motel room.

The Department was concerned about the children's safety and supervision. The Department offered the family counseling, family stabilization services, and parenting services,

_____

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The parents' oldest child was over the age of sixteen and chose not to be adopted, so he was not part of the termination of parental rights proceeding.

including the Raising Our Children (ROC) parenting program. The parents, however, missed multiple appointments with the ROC program and "were not consistently engaging."[3]

Between June and August 2016, the parents placed the children with the family's pastor. During the summer, the parents did not consistently visit with or financially support the children. In addition, mother was expected to sign up for driving school, for which the Department offered to pay, and schedule doctor and counseling appointments for the children, but she did not complete these tasks. The Department also financially assisted the parents with transportation expenses and storage fees.

At the end of the summer of 2016, the Department held a family partnership meeting and explained that the parents had not made sufficient progress to enable the children to return to their care. The parents placed the children with their maternal grandmother and her husband, and initially, the children did well at the placement. The Department offered counseling for the oldest two children, but mother had missed or cancelled too many of the children's counseling appointments, and the counselors had to stop seeing the children.[4] The Department referred mother and father to the Department's family stabilization program to focus on budgeting and employment, but they refused to cooperate with the program.

On March 8, 2017, the Spotsylvania Juvenile and Domestic Relations District Court (the JDR court) awarded joint legal custody of the children to the parents and the maternal grandmother and primary physical custody to the maternal grandmother. The parents agreed that they could not "properly care" for the children at the time.

The Department provided ongoing assistance for the family, including financial assistance for the maternal grandmother while the children lived with her. For example, the

---

[3] The parents eventually completed the ROC program in February 2017.

[4] The Department was able to reinstate the counseling for the children.

Department paid for repairs to her air conditioner and water heater, as well as eradicating a bed bug problem. The Department also provided a family support worker to help with discipline, organization, and cleanliness.[5]

Once school started, the children's behaviors "steadily declined." The Department provided the maternal grandmother with a parent aide, but the maternal grandmother was "consistently resistant" to parenting advice. The Department became increasingly concerned about the children's safety because the children were leaving the home without the maternal grandmother's knowledge.[6] The children's hygiene also was "extremely poor."

On December 7, 2017, the Department investigated allegations of physical neglect. Upon entering the maternal grandmother's home, the social workers were overcome with the smell of feces and urine. The maternal grandmother explained that the water to the children's toilet was cut off, but it was still being used and was filled with urine and feces. The social workers also detected strong urine and feces odors in the children's bedrooms, which were "very dirty."

As a result of the conditions in the maternal grandmother's home, the Department removed the children and placed them in foster care. The children were ages fifteen, thirteen, ten, eight, and six years old. The Department determined that the parents' home was not a suitable placement for the children. Mother and father still lived in the motel and were behind on rent. They did not have any food and repeatedly missed appointments.

On December 8, 2017, the JDR court entered emergency removal orders. The JDR court subsequently adjudicated that the children were abused or neglected and entered dispositional orders on February 16, 2018. Initially, the foster care goal was relative placement, with a

---

[5] Mother and father testified that they had been staying at the maternal grandmother's house four nights per week to help with the children also.

[6] Two of the children snuck out of the maternal grandmother's house and stole money and items from "numerous people."

concurrent goal of adoption. The Department argued that a foster care goal of return home was not "a viable option." At a foster care review hearing in June 2018, the Department sought to change the goal to adoption, but the JDR court disapproved the plan. The Department changed the foster care goal to return home, with a concurrent goal of adoption, which the JDR court approved in August 2018. The Department required that mother cooperate with the Department and attend all appointments, participate in a psychological and psychiatric evaluation, participate in counseling, take any prescribed medications, obtain suitable and safe housing, comply with random drug and alcohol screens, obtain and maintain stable employment or income, participate in a parenting class, attend visitations, and demonstrate an ability to implement learned parenting techniques.

The Department offered mother and father supervised, therapeutic visitation with the children, but they never progressed to unsupervised visitation. Mother never demonstrated that she knew how to manage and redirect the children's behaviors. Mother was "very withdrawn from the children" and would not engage with them, instead focusing her attention on her cell phone.[7] The visitation supervisors were concerned about mother's inability to "maintain the safety and care of the children" and maintain appropriate parent-child boundaries. Visitations ceased in January 2019, after the JDR court terminated the parents' parental rights.

The Department also referred the parents to family stabilization services, which tried to work with mother and father on a budget, but the parents did not fully cooperate. Mother and father provided partial information and attended only seven out of fifteen appointments with family stabilization services. In July 2018, both mother and father were employed, but by November 2018, mother was unemployed. Mother was offered assistance with finding another

---

[7] The visitation supervisor testified, however, that mother became more engaged with the children during the last two visits.

job, but she did not follow through with the referrals. From June 2018 until November 2018, mother and father lived in a one-bedroom camper at a campground, even though the children could not live there with them. They also purchased a used car in September 2018, but the car could not accommodate their entire family. Mother admitted that they were having trouble saving money and could not afford a house; mother expressed even more frustration when they were expected to pay child support.

In December 2018, the Department recommended that the foster care goal be changed to adoption and petitioned to terminate the parents' parental rights. Mother had not progressed with her parenting skills, and she was unemployed. She also had not obtained and maintained suitable housing. On January 17, 2019, the JDR court approved the foster care goal of adoption and terminated mother's parental rights.[8] Mother appealed the termination orders to the circuit court.

On April 12, 2019, the parties appeared before the circuit court. The Department presented evidence that when the children entered foster care, they were "wild" and did not have good hygiene skills. The children did not know how to brush their teeth, and the youngest child refused to wash or brush her hair, which was very knotted. All of the children required dental care, and three of the children needed eyeglasses. One of the children required medication to fall asleep due to his extreme anxiety.

The Department provided all of the children with in-home counselors, and two of the children attended outpatient counseling, too. At the circuit court hearing, the social worker testified that the children were "doing phenomenal." The foster care mother reported that the child who had trouble sleeping no longer needed medication. The children were up-to-date with

---

[8] The JDR court also terminated father's parental rights, and he appealed the termination orders to the circuit court. The circuit court terminated father's parental rights, but father did not appeal that decision.

all of their medical and dental needs. The children had improved academically, and one child received extra assistance with his schoolwork.

Mother testified that she and father were ready and able to take care of the children. In November 2018, mother and father moved from the camper to a one bedroom, one bathroom, basement apartment. Mother thought that the apartment could accommodate all of the children. Mother still did not have her driver's license and was unemployed at the time of the circuit court hearing.

After hearing all of the evidence and closing arguments, the circuit court found that the termination of mother's parental rights under Code § 16.1-283(C)(2) was in the children's best interests. The circuit court entered orders memorializing its rulings. This appeal followed.

ANALYSIS

Mother argues that the circuit court erred in terminating her parental rights under Code § 16.1-283(C)(2) and in finding that the termination was in the best interests of the children. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother asserts that she substantially remedied the conditions that led to the children's placement in foster care. She emphasizes that she was not living in the maternal grandmother's home when the Department removed the children. Mother also stresses that she and father

moved from the motel room to a larger apartment. She further argues that she made progress while the children were in foster care and that she regularly visited the children, with whom she had a "good relationship."

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

The Department started offering services to the family in April 2016, due to concerns about the family's living situation, the children's hygiene problems, and lack of supervision. The situation did not improve, so the children were "parentally placed" with their pastor for the summer of 2016 and then with the maternal grandmother from September 2016 until December 2017. In March 2017, the JDR court made a finding, which the circuit court accepted, that "the parents agreed that they couldn't currently properly care for the child[ren]." The visitation supervisor testified that mother could not manage the children's behavior and redirect them. Mother never progressed to the point of having unsupervised visitations. The parents refused to cooperate with family stabilization services, which tried to assist them with financial matters and create a budget. At the time of the circuit court hearing, mother was unemployed, lived in a

one-bedroom basement apartment, and did not have her driver's license. The circuit court found that mother was in a "very similar position" as to when the Department first became involved.

The children had not been in mother's care for approximately three years. The children's foster care mother described the children as "feral" and "wild" when they started staying with her. The children lacked basic hygiene skills and had numerous medical, dental, emotional, behavioral, and academic problems. While in foster care, they received counseling, went to the doctor and dentist, and improved in school. Mother was not in a position to care for the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the totality of the circumstances, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2) and finding that the termination was in the best interests of the children.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.