COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Huff and Senior Judge Annunziata


JOHN R. TYLER, JR.

                                                  MEMORANDUM OPINION*

v.       Record No. 1840-19-4                         PER CURIAM
                                                  MAY 26, 2020

CULPEPER COUNTY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Susan L. Whitlock, Judge

(Ryan J. Rakness; Rakness and Wright PLC, on brief), for appellant.

(Shelia Jane Weimer, Senior Assistant County Attorney and DSS
counsel; Ligia Smith, Guardian *ad litem* for the minor child, on
brief), for appellee.


     John R. Tyler, Jr. (father) appeals the circuit court's orders terminating his parental rights

and approving the foster care goal of adoption/relative placement. Father argues that the circuit

court erred by terminating his parental rights, "including but not limited to [his] visitation rights,"

and approving a foster care goal that "did not include returning the child to [him]." Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

            * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Father and Jennifer Dodson (mother) are the biological parents to the child who is the subject of this appeal.[2] On September 8, 2017, the Culpeper County Department of Social Services (the Department) received a report of alleged child abuse/neglect concerning the child, who was almost six years old at the time. The child reported that mother's husband, Brian Dodson, had hit him; the social worker saw marks, cuts, and bruises on the child's head, forehead, cheeks, back, legs, and arms. The child informed the Department that he, his mother, his half-sister, and Dodson had moved from one motel to another motel, but they also had lived in their truck. The Department tried to call mother at the motel but was told that the family had checked out of their room. The Department also tried to find a suitable relative as an alternative placement, to no avail.

The Department petitioned to remove the child and placed him in foster care on September 12, 2017. Initially, the Department placed the child in a foster home; however, the

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The Culpeper County Juvenile and Domestic Relations District Court terminated mother's parental rights. Although mother appealed the JDR ruling to the circuit court, she subsequently signed an entrustment agreement with the Department and did not pursue her appeal.

child's needs were greater than what the home could provide, so the Department placed the child in a group home to assess his needs and treatment.

The Department notified father that the child was in foster care and learned that father had not had contact with the child for approximately one year. Father informed the Department that he had been "in and out of incarceration" and did not have stable housing, so he was unable to care for the child at the time.

On November 16, 2017, the Culpeper County Juvenile and Domestic Relations District Court (the JDR court) adjudicated that the child was abused or neglected and entered a dispositional order. Father was not present at the hearing because he was incarcerated.

The child stayed in the group home for approximately two months before he moved to a therapeutic foster home. The Department had arranged for father to have telephone visitation with the child, but father missed some of the calls. The Department subsequently arranged for father to have supervised visitation with the child, but father missed some of those visits too.

The Department reviewed with father the foster care plan's requirements, including that he had to obtain and maintain stable housing, demonstrate his ability to provide financially for the child's needs, remain substance free, and not engage in criminal activity. Father did not have stable housing throughout much of the time that the child was in foster care, as he stayed in motels or other people's homes. The Department offered to help father find housing, but he declined the assistance. Father was self-employed and did tree work and landscaping, and despite requests from the Department, he never provided it with proof of income or documentation to show that he could provide financially for the child.

The Department referred father for parenting classes, which he completed in the summer of 2018. Once father completed the parenting classes, he completed a psychological, substance

abuse, and parental capacity evaluation with Dr. A.J. Anderson, a clinical psychologist.[3]

Dr. Anderson found that father had "limited intellectual resources" and "limited capacities for reasoning, remembering, and solving problems." Dr. Anderson also found that father had an "overly emotional and often overly aggressive behavior" and would likely model "inappropriate ways of handling anger to the child." Dr. Anderson further surmised that "in spite of his good intentions, in spite of apparently loving this child, [father] has [a] very low likelihood of being able to maintain a stable, nurturing home environment protecting the best interest of any child . . . ." Dr. Anderson opined that "it [was] extremely unlikely that [father] could ever provide safe and effective parenting on his own without family or agency assistance and support." Dr. Anderson also doubted that father would "be able to benefit sufficiently from any kind or amount of services to change his dismal prospects for getting better." Dr. Anderson concluded that father's "limitations are such that he is not capable of providing safe and effective parenting on his own. Nor is it likely that any kind or amount of services can position him to parent independently." Nevertheless, Dr. Anderson recommended an outpatient substance abuse treatment program, mental health treatment, parenting classes, and "hands-on" parenting training. After the parenting evaluation, the Department met with father, who still did not have housing. The Department required father to participate in substance abuse treatment, but father initially refused treatment.

On November 23, 2018, father was incarcerated and did not have any further contact with the child because the child's therapist opined that it would be "detrimental" to the child's mental health. The Department no longer considered father as a possible placement because of the

---

[3] The Department had informed father of the need to participate in a parental capacity evaluation in the initial foster care plan; however, father did not complete the evaluation until the child had been in foster care for almost one year.

- 4 -

results of the parental capacity evaluation, father's lack of housing, and the child's stated fear of father.

On December 21, 2018, the Department placed the child with mother, Dodson, and his half-siblings for a trial home placement. The Department had to remove the child on January 11, 2019, after he admitted to sexually abusing his younger sister and alleged that mother sexually assaulted him. The allegations against mother were unfounded, but mother thought that for the safety of her other children, it was best for the child to remain in foster care.

The Department subsequently petitioned to terminate the parents' parental rights. On June 24, 2019, the JDR court terminated father's parental rights and approved the foster care goal of adoption/relative placement. Father appealed the JDR court's rulings. After the termination hearing in the JDR court, father asked the Department what he had to do to receive custody of the child. The Department reminded father of the need for a substance abuse evaluation and also recommended outpatient therapy. Father met with a counselor for a substance abuse evaluation, which came back negative; the counselor had no concerns. Father also started outpatient therapy through the Rappahannock Rapidan Community Services Board.

Father informed the Department that he had rented a house, but because of his incarceration, the Department could not visit father's home until one week before the circuit court hearing. Father had moved to the home two or three months earlier, but the social worker thought that it looked like it had been vacant "for awhile." The social worker described the home as "sparsely furnished" and "somewhat dirty," and she noticed that there was very little food in the house. The Department noted that there were some safety issues with the home, such as an unsafe door and the presence of a bow and arrow.

The parties appeared before the circuit court on September 16, 2019. The Department presented evidence about the child's well-being. The child had participated in outpatient and

- 5 -

in-home counseling and received medication management. The child's in-home worker testified that they had been working on anger management techniques, coping strategies, and self-esteem and that the child was doing "very well" in foster care.

After the Department presented its evidence, father moved to strike, which the circuit court denied. Father testified that his financial situation prevented him from obtaining housing until shortly before the circuit court hearing. He was self-employed and had been working to build his business, but he believed that he was now in a position to provide financially for the child. Father admitted that he had been convicted of "a lot" of felonies and had an ankle monitor at the time of the circuit court hearing. A criminal trial for assault and battery charges was scheduled for September 24, 2019, after the termination hearing. Father admitted to having been convicted of more than two counts of assault and battery against a family member. Father further acknowledged that while the child had been in foster care, he had been incarcerated "two or three times."

After hearing the evidence and argument, the circuit court took the matter under advisement. On October 16, 2019, the parties appeared before the circuit court for its ruling. The circuit court acknowledged that father loved the child and had "an earnest and sincere desire" to have the child returned to him, but it found that the child had more needs than father was "capable of handling." Consequently, the circuit court held that it was in the child's best interests to terminate father's parental rights. The circuit court entered orders terminating father's parental rights under Code § 16.1-283(C)(2) and approving the foster care goal of adoption/relative placement. This appeal followed.

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best

interests.'"  Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Father argues that the circuit court erred by terminating his parental rights and approving a foster care goal that did not include returning the child to him.  Father acknowledged that he had not made "substantial progress in complying with the Department's recommendations" during the first twelve months that the child was in foster care; however, he emphasized that at the time of the circuit court hearing, he had complied with most of the Department's requirements.  He had completed the parenting classes, the psychological and parenting capacity evaluation, and the substance abuse evaluation; he also had started counseling.  He had secured housing and was running his own tree service and landscaping business.  Father asserted that there was "no evidence in the record that [he] was not then capable of adequately providing for the child."

The circuit court terminated father's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the

parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Before the child entered foster care, father had not seen the child for approximately one year. After the child entered foster care, father was never able to demonstrate that he was capable of caring for the child. He was incarcerated several times while the child was in foster care. Father still had pending criminal charges during the circuit court hearing. Father admittedly did not have stable housing until shortly before the circuit court hearing. The Department expressed concern about the condition and safety of the housing that father had finally secured. Father also never provided documentary proof that he was able to provide financially for the child and admitted that his financial difficulties caused his delay in obtaining housing and furniture. In addition, the circuit court accepted Dr. Anderson's conclusion that father had "a low likelihood of maintaining a stable, nurturing environment and [was] not likely to benefit from any kind or amount of services."

The circuit court found that the child's needs were more than father could handle. The child required "a safe, nurturing home where his physical, emotional, and educational needs are met." The child participated in outpatient and in-home counseling and was prescribed several medications. The child reportedly was improving and doing well in foster care. Moreover, at the time of the circuit court hearing, the child had been in foster care for approximately two years, and father was still not in a position to care for the child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the totality of the circumstances, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).  With respect to father's challenge of the foster care goal, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans."  <u>Toms</u>, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.[4]  Rule 5A:27.

<u>Affirmed and remanded.</u>

---

[4] In accordance with Code § 8.01-428(B), this matter is remanded to the circuit court to correct the clerical error on the first page of the termination of parental rights order stating that the order is from the JDR court, rather than the circuit court.