COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Annunziata

LAURIANNE KRISTIN QUESENBERRY

                                                        MEMORANDUM OPINION*

v.      Record No. 1340-20-3                        PER CURIAM
                                                       JULY 27, 2021

GILES COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF GILES COUNTY
Robert M. D. Turk, Judge

(Suzanne Bowen, on brief), for appellant.

(Richard L. Chidester, County Attorney; Zachary B. Smith, Guardian
*ad litem* for the minor children; Buckland Law Firm, P.L.L.C., on
brief), for appellee.

Laurianne Kristin Quesenberry (mother) appeals the circuit court's orders terminating her

parental rights to her three children. Mother argues that the circuit court erred in finding that the

evidence was sufficient to terminate her parental rights "when the record shows that she participated

in all services provided by the Department of Social Services; maintained visitation with her sons;

and had good cause for her lack of employment and appropriate housing." Upon reviewing the

record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we

summarily affirm the decision of the circuit court. See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother and Eric Adam Quesenberry (father) are the biological parents to E.Q., L.Q., and R.Q., the children who are the subject of this appeal.[2] Father and mother reportedly married in 2012 and separated in 2018. After the parents' separation, father and the children moved to his mother's house. In September 2019, the Giles County Department of Social Services (the Department) received a complaint that father was "unsteady on his feet" when he picked up one of the children from school. The Department conducted a home visit and found that the living conditions were "not safe" for the children due to clutter in the home, mattresses "all over the floor," and black mold in the bathroom. The Department entered into a safety plan with father, who agreed to move with the children out of his mother's home and into his girlfriend's home.

On September 16, 2019, father brought the children to school late and "appeared to be on drugs" because he could "barely stand up or keep his eyes open and had incoherent speech." Later that day, the Department met with father who was "irrational" and denied any drug use. Father eventually admitted to using Suboxone after the Department gave him a drug screen. The

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Father appealed the circuit court's ruling terminating his parental rights to this Court. See E. Quesenberry v. Giles Cnty. Dep't of Soc. Servs., Record No. 1297-20-3.

Department removed the children from father's care; E.Q., L.Q., and R.Q. were ages seven, six, and three, respectively.

At the time of the removal, mother was living with her boyfriend and his son in a two-bedroom home in Vinton, Virginia. Mother had seen the children three times the year before they entered foster care. The Department required mother to obtain and maintain employment and stable housing. Mother advised the Department that she was not a United States citizen and had "immigration issues" that affected her ability to obtain employment. The Department provided her with funding to consult with an immigration attorney. Mother later reported that she was working.

The Department advised mother that her boyfriend's two-bedroom home was too small to accommodate E.Q., L.Q., and R.Q. The Department referred mother to the Hope House to assist her with obtaining her own housing that included adequate space for the children. Mother did not seek alternate housing.

In addition, the Department required mother to complete a comprehensive evaluation and parenting classes. Mother completed the comprehensive evaluation, which included a psychological assessment. The evaluator found that mother did not need any mental health or substance services, but recommended parenting classes for her. Mother completed all but two of the parenting classes, which were cancelled because of the pandemic.

The Department offered supervised visitations to mother, who regularly attended the visits. Mother also maintained open communication with the foster mother, who provided mother with updates and photographs of the children. The foster mother also arranged for mother to call and visit with the children at the foster home.

Because mother had not substantially remedied the conditions that led to the children's continuation in foster care, the Giles County Juvenile and Domestic Relations District Court (the

JDR court) terminated mother's parental rights to the children and approved the foster care goal of adoption. Mother appealed to the circuit court.

At the circuit court hearing, the Department presented evidence that the children have been in the same foster home since September 17, 2019, and the foster parents were willing to adopt the children. When the children entered foster care, they had poor hygiene skills and needed help bathing and toileting. R.Q. had trouble communicating. The Department referred the children for evaluations and therapy. Dr. Alyson Hartkopf, a pediatrician at the Child Development Clinic, evaluated L.Q. and R.Q. for developmental delays and behavioral concerns. Dr. Hartkopf diagnosed L.Q. with "attention deficit/hyperactivity disorder, combined type (ADHD); oppositional defiant behavior; sleeping difficulty; and child within foster care system." Dr. Hartkopf initially prescribed medication for L.Q.'s ADHD and subsequently prescribed him medication for anxiety and sleeping. Dr. Hartkopf diagnosed R.Q. with ADHD and prescribed medication for him.

In addition, Dr. Hartkopf found that L.Q. and R.Q. had speech and developmental delays when compared with other similarly aged children. Dr. Hartkopf referred L.Q. and R.Q. to speech and occupational therapy and recommended that both children continue with play therapy. By the time of the circuit court hearing, L.Q. and R.Q. had made "significant progress . . . in catching up" with their peers developmentally, and all three children's hygiene had "drastically improved." L.Q. and R.Q. had been discharged from speech therapy, and L.Q. had been discharged from occupational therapy.

Another evaluator diagnosed the children with post-traumatic stress disorder and recommended that they continue with therapy to work on social skills, healthy attachments, and regulated behaviors. To supplement the children's therapy, the Department provided in-home

services to the children to assist them with anger management, impulse control, and sibling conflict.

Due to L.Q.'s special needs, the Department referred L.Q. for an independent evaluation, which was completed in May 2020. The evaluator diagnosed L.Q. with reactive attachment disorder and found that he was "severely neglected" while in the care of mother and father. The evaluator opined that L.Q. would need therapy for years and stressed that L.Q. needed a living environment with "consistent, stable love and consequences and discipline." The evaluator testified that L.Q.'s prognosis would be "very poor" if he returned to "his original home," but his prognosis would improve if he remained in foster care and was adopted.

The social worker testified that mother still had not resolved her "immigration issues." Mother also had not moved from her boyfriend's home, despite being advised that it did not have "adequate space" for the children because it had only two bedrooms. Mother never obtained stable employment and relied financially on her boyfriend. Since the children entered foster care, mother relied on transportation services through the Department and she had not demonstrated financial stability or an ability to meet the children's needs. She also never contacted the children's counselor, therapist, occupational therapist, or speech therapist to ask about the children.

At the conclusion of the Department's evidence, mother joined father's motion to strike, which the circuit court denied. Mother did not present any evidence. After hearing the evidence and arguments, the circuit court terminated mother's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best

interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in finding that the evidence was sufficient to terminate her parental rights "when the record shows that she participated in all services provided by the Department of Social Services; maintained visitation with her sons; and had good cause for her lack of employment and appropriate housing."[3] Mother asserts that her "lack of immigration status in the United States has prevented her from obtaining independent and appropriate housing or employment."

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

---

[3] Mother cites Code § 16.1-283(C)(1) in her opening brief. The circuit court did not terminate mother's parental rights under Code § 16.1-283(C)(1), so we will not address that portion of her arguments.

The circuit court acknowledged that the children were removed from father's home and that mother "didn't have anything to do with [the cause of the children's removal]." Mother's housing situation, not her immigration status, remained a concern while the children were in foster care. The Department assisted mother with providing her funding for an immigration attorney and referring her to the Hope House, but mother did not change her situation. The circuit court found that mother had been unable to provide stable housing for the children, and it had received no evidence that mother could remedy that condition. Mother admitted in her closing argument that she "still has not been able to do what [she] would need to do in order to take care of her children."

The circuit court, however, was most concerned about the children. The circuit court heard evidence that the children suffered from post-traumatic stress disorder and that the parents were probably triggers for the children. When L.Q. and R.Q. entered foster care, they had developmental and speech delays. The circuit court stressed that L.Q. was diagnosed with reactive detachment disorder due to "severe neglect" and that the prognosis for him would be "devastating" if he were returned to his parents. All three children participated in therapy while in foster care, yet mother never contacted the children's counselors or therapists. The circuit court found that the children "have some issues and they haven't been dealt with properly by [mother and father] when they were in [mother's and father's] custody." The circuit court further found that there was no evidence that the parents could handle the children's issues in the future.

At the time of the circuit court hearing, the children had been in the same foster care home for thirteen months. The circuit court found that the children were "making progress" and "have to remain in foster care." Mother was not in a position to have custody of the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out

when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the entire record, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.