UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges AtLee, Fulton and Friedman


EBONY LASHAY SMITH, A/K/A
 EBONY MANNS-SMITH

                                                        MEMORANDUM OPINION*
v.        Record No. 0268-21-4                                PER CURIAM
                                                         SEPTEMBER 21, 2021

FAIRFAX COUNTY DEPARTMENT
 OF FAMILY SERVICES


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Thomas P. Mann, Judge

(Mark Bodner, on briefs), for appellant.

(May Shallal; Perry S. Garson, Guardian *ad litem* for the minor
children; Office of the County Attorney, on brief), for appellee.


        Ebony Manns-Smith (mother) appeals the circuit court's orders terminating her parental

rights to K.F. and M.F. and approving the foster care goal of adoption.  Mother argues that the

circuit court erred in finding that the evidence was sufficient to terminate her parental rights under

Code § 16.1-283(C)(2) and that the termination was in the children's best interests.  Mother further

asserts that the circuit court erred in terminating her parental rights to K.F. because the "J&DR

[c]ourt's [o]rder of termination erroneously determined that [K.F.] was not of the age of discretion

capable for objecting to such relief when she was fourteen years old at the time that [o]rder was

entered."  She contends the circuit court also failed to address the issue concerning K.F.'s age and

preference.  Upon reviewing the record and briefs of the parties, we conclude that this appeal is

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

without merit.  Accordingly, we summarily affirm the decision of the circuit court.  See Rule 5A:27.

## BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court."  Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological parent to K.F., M.F., and A.J.  On September 12, 2018, the Fairfax County Department of Family Services (the Department) received a report alleging abuse and neglect after mother, who was high on drugs, was involved in a physical altercation with a neighbor in the presence of the children.  Mother denied any substance abuse and reported "being clean for about a year."  The Department discussed possible services available to mother.

On September 27, 2018, the police found mother standing on a sidewalk in Alexandria; she was unresponsive and drooling.  Mother had then-three-year-old A.J. with her in a stroller. The police suspected that mother was under the influence of Phencyclidine (PCP).  Mother was transported to the hospital, and the Department was notified.  A.J.'s father assumed custody of him.  K.F. and M.F., who were twelve and ten years old respectively, stayed with their maternal aunt in Maryland.

Following the incident in Alexandria, mother was required to complete a drug screen and an alcohol and drug assessment, which she did.  Although mother tested positive for marijuana

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed."  Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

and PCP, she denied using any drugs. The Department referred mother to a second drug screen; she tested positive for PCP. Mother continued to deny any drug use. The Department informed mother that the alcohol and drug assessment recommended that she complete the Intensive Outpatient Treatment Program (the IOP).

Meanwhile, the Department entered into a safety plan with mother and the aunt, who agreed that K.F. and M.F. would stay in the aunt's care and have only supervised contact with mother.[2] The Department subsequently learned that K.F. and M.F. were attending school in Fairfax County and staying with mother unsupervised after school, until the aunt could pick them up. Due to mother's drug use and noncompliance, the Department placed K.F. and M.F. in foster care on November 16, 2018.

The Fairfax County Juvenile and Domestic Relations District Court (the JDR court) entered emergency and preliminary removal orders. The JDR court adjudicated that K.F. and M.F. were abused and neglected and entered dispositional orders. The JDR court ordered mother to participate in random drug screens, a psychological evaluation, and a parent-child assessment. The JDR court further ordered mother to follow through with all recommendations from the Community Services Board and Alcohol and Drug Services.

After the children's removal, the Department attempted to communicate with mother via phone and letters, but mother was uncooperative. The Department was unable to meet with her individually until March 2019. The Department reviewed with mother the JDR court's orders and the required services. In addition to the court-ordered services, the Department required mother to demonstrate that she could meet the children's needs. Mother also had to obtain and maintain safe and stable housing and employment.

---

[2] Mother denied entering into a safety plan and testified that the children lived with her "the whole time."

The Department advised mother that she must follow the recommendations of the alcohol and drug assessment and complete the IOP. Initially, mother was placed on a waitlist. Mother was discharged from the waitlist group twice for being noncompliant. In 2019, mother tested positive for marijuana and PCP twice. In February 2020, mother entered the IOP and tested positive for PCP and marijuana. In March 2020, mother tested positive twice for alcohol. Due to the pandemic, the IOP did not offer any further drug screens. The Department, however, referred mother to several drug screens outside of the IOP. In April 2020, mother refused a drug screen; however, mother tested negative for "four or five screens" thereafter. Mother never admitted to using PCP while in the IOP. After receiving "as much help from [the IOP] as she could," mother completed the program on August 27, 2020.

In addition to the substance abuse treatment, the Department required mother to participate and cooperate with home-based services for weekly supervised visitation. The Department reviewed with mother the rules for visitations. She was required to demonstrate "positive parenting skills and interactions with the children," as well as show the ability to prevent future abuse and neglect. Mother "struggled with her boundaries with the children." The Department instructed mother to refrain from "negative talk about the Department, [c]ourt, [and] foster parents . . . in the presence of the children." Mother became "very combative and angry" when she was redirected or offered suggestions. On one occasion, mother physically threatened the home-based worker after being redirected.[3] Given mother's behavior during the visits, security had to intervene. In March 2019, after a second security intervention, the Department suspended mother's visitation until she completed the previously ordered psychological evaluation.

---

[3] Mother denied physically threatening the worker.

Mother had missed her first appointment for the evaluation, and it took months to get the evaluation rescheduled. Dr. William Ling, an expert in clinical psychology and parent/child assessments, evaluated mother in July 2019. Dr. Ling found mother to be "emotionally impulsive," and he diagnosed mother with a mild form of bipolar disorder called cyclothymic disorder, which "means that a person's emotions and thoughts tend to swing to a greater intensity and at a faster frequency than most people." Dr. Ling also found that mother had a "greater propensity for . . . conflicts between her and others, with a pattern that was similar to that seen in individuals who were diagnosed with a [b]orderline [p]ersonality [d]isorder." Dr. Ling opined that mother's "involvement in the parenting role was limited." Dr. Ling recommended that mother consult with a psychiatrist for a medical evaluation, and he recommended that she participate in individual and group therapy.

Mother then missed two scheduled meetings to review the evaluation with the Department and the home-based worker. The Department had informed mother that her visits would not resume until she participated in the required meeting. Mother finally met with the Department, but she was "not amenable" to Dr. Ling's therapy recommendations. At the time of the circuit court hearing, the social worker had no confirmation that mother had ever engaged in therapy.

Nevertheless, mother's supervised visits with K.F. and M.F. resumed on September 25, 2019. The Department implemented new visitation rules in response to the problems that had developed in earlier visits. The Department reviewed with mother the new visitation rules, including maintaining her sobriety, not talking to the children about court or returning home, prohibiting any disparaging remarks, receiving pre-approval for any items or guests brought to visitations, and prohibiting the use of a cell phone, aside from taking photographs. Mother

struggled to comply with the rules and work cooperatively with the home-based worker who supervised the visits.

The Department switched the visits from in-person to virtual in March 2020 due to the COVID-19 pandemic, and then in-person visits resumed in July 2020. Mother continued to be "belligerent" and did not comply with the visitation rules, such as bringing in items after being told not to do so and not wearing a mask.

On August 26, 2020, mother appeared impaired for a visit, so the Department canceled the visit. Mother said that she was "not high," but she was sweating and stumbling. Her speech was slurred, and her eyes were bloodshot. The children were upset with mother's behavior and the cancellation of the visit.

On September 24, 2020, the JDR court terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed to the circuit court.

The Department continued to offer supervised visitation to mother, and in October 2020, the Department witnessed mother engaging in an "intense conversation" with K.F. and questioning K.F. about why she did not want to return home. Mother was "very harsh" and "verbally aggressive." M.F. "pleaded" with mother to stop, and the Department determined that it was appropriate to intervene. Mother said that "no one could tell her how to talk to her children."

Mother became increasingly resentful and angry toward the visitation supervisors. The visits became "challenging," as mother frequently threatened the visitation supervisors. Consequently, the Department moved mother's visitations to the Fairfax County courthouse. At the January 27, 2021 visit, mother showed "very little interest in the children" and talked a lot about herself. Mother also struggled with appropriate topics of conversation and setting appropriate boundaries. When a visitation supervisor tried to redirect, mother became "verbally

aggressive and challenging," which upset the children. At a subsequent visit, mother repeatedly used a derogatory term toward M.F. and refused to stop despite being asked to do so.[4] The children became very upset, and the visitation supervisor ended the session early.

The parties appeared before the circuit court for a three-day trial in March 2021. The Department presented evidence that the children had a "good relationship with their foster mom." K.F. had been diagnosed with oppositional defiant disorder and anxiety, and M.F. had been diagnosed with attention deficit hyperactivity disorder. Both children participated in outpatient therapy, and M.F. also has a home-based therapist.

The Department also presented evidence that mother had a bond with the children. Mother, however, was "[v]ery dismissive" of the children's experiences and focused primarily on herself during visitations. When mother became belligerent toward the visitation supervisors, the children "would largely go silent and kind of watch."

During the hearing, mother confirmed that K.F. had spoken with her about staying in her foster home, but subsequently testified that K.F. "doesn't know what to do." Mother admitted that she told K.F. that "she shouldn't stay with somebody that she doesn't know."

Despite all the services offered to mother, the Department had not seen any "marked progress" in how she deals with the children. The Department was concerned that mother still did not know why the children came into foster care and had not taken any responsibility for her role in their being in foster care. When asked about her role in the children's removal, mother testified that "[m]ultiple accusations and phone calls were made on me." Mother further acknowledged that she was "accused" of using marijuana and PCP. She denied having "an ongoing problem" with drugs.

---

[4] Mother denied using a derogatory term to describe M.F.

The Department was concerned about the children's safety and well-being if mother resumed custody. The social worker confirmed that she and mother had discussed the importance of mother's participation in individual counseling "from the first time" that they met, and she reiterated with mother the need for counseling after receiving Dr. Ling's evaluation. The social worker also discussed the need for counseling with mother after she completed the IOP and after a visit in January 2021. Mother testified that she had "tried a few times" to sign up for therapy. Mother claimed to be on a waitlist for therapy through the county.

In addition, mother had not advised the Department of her plan if the children were returned to her, nor had she indicated whether she would continue with services if the children returned home. At the circuit court hearing, mother testified that if the children were returned to her, she would "like to" continue with the children's therapy because she and the children had been "through a lot of trauma."

At the close of all the evidence, the guardian *ad litem* presented his report. The guardian *ad litem* advised the circuit court that M.F. wanted to go home with mother. The guardian *ad litem* then indicated that K.F.'s opinion had changed during her time in foster care. Initially, she wanted to go home with mother, but after the visit in August 2020 when mother appeared high, K.F. "seemed to be tending towards wanting to stay in her foster home." Before the circuit court hearing, K.F. expressed to the guardian *ad litem* that she wanted to stay with her foster mother.

After hearing the evidence, the guardian *ad litem*'s report, and the parties' arguments, the circuit court terminated mother's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption.[5] This appeal followed.

---

[5] The children's maternal grandfather had petitioned for custody of K.F. and M.F., and he testified at the circuit court hearing. The circuit court denied his petition for custody. The maternal grandfather did not appeal that decision.

ANALYSIS

Termination of Parental Rights

Mother challenges the circuit court's orders terminating her parental rights and approving the foster care goal of adoption. "When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 319 (2013) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)).

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan, 13 Va. App. at 128). "Where, as here, the court hears the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Mother emphasizes that she completed many of the Department's required services, including the IOP, the psychological evaluation, parenting classes, and random drug screens. She also regularly participated in visitations. Mother contends that she "substantially remedied

the conditions that led to her children's foster care placement. The statute does not require more."

Mother's contrary arguments notwithstanding, in determining whether to terminate a parent's parental rights under Code § 16.1-283(C)(2), the trial court examines whether a parent has remedied "substantially the conditions which led to *or required continuation* of the child's foster care placement." Code § 16.1-283(C)(2) (emphasis added). The trial court does not focus merely on the conditions leading to foster care placement. "[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

The Department removed the children from mother's care over concerns about substance abuse and her failure to comply with the Department. The Department offered mother numerous services, and although she completed some of the services, she continually denied any substance abuse problems, did not participate in individual therapy, and had not demonstrated an ability to meet the children's needs. The circuit court found that "the mother's deficiencies are far more intense than just simply a drug, employment and stability problem. Her issues are mental health issues, and . . . she needs treatment . . . ."

The circuit court further found that mother had "no capacity to see the world from her children's eyes" because "she's only able to pay attention to her needs and her wants and desires, . . . to the exclusion of everyone else's safety and well-being." The Department presented evidence that mother upset the children and behaved inappropriately during the visitations. The Department eventually moved the visitations to the courthouse due to safety concerns because of mother's aggressive behavior and persistent refusal to comply with the visitation rules. The

circuit court agreed with Dr. Ling that mother did "not understand how to parent" and did not understand herself.

The circuit court explained that mother could have addressed her issues through therapy, but she chose not to do so. The circuit court further found that mother's efforts to seek mental health assistance were "pitiful." The circuit court concluded that without therapeutic help, "mother will simply never have the ability to correct the circumstances which brought the children into care in the first place." The record supports the circuit court's finding that mother had not resolved the issues that led to the continuation of the children's placement in foster care.

At the time of the circuit court hearing, the children had been in foster care for approximately two years. The circuit court held that the children needed "stability and consistency" and that mother was not in a position to provide that for them. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the totality of the circumstances, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2) and finding that the termination was in the children's best interests.

Age of Discretion

Mother argues that the circuit court erred in terminating her parental rights to K.F. because the "J&DR [c]ourt's [o]rder of termination erroneously determined that [K.F.] was not of the age of discretion capable for objecting to such relief when she was fourteen years old at the time that [o]rder was entered." She also contends the circuit court failed to consider K.F.'s age and preference before it terminated mother's parental rights. Mother admits that she did not preserve

her arguments in the circuit court but asks this Court to consider them under the ends of justice exception to Rule 5A:18.

The "ends of justice exception," however, is a narrow one, which is to be used "sparingly when an error at trial is clear, substantial and material." Merritt v. Commonwealth, 69 Va. App. 452, 460 (2018) (quoting Masika v. Commonwealth, 63 Va. App. 330, 333 (2014) (internal quotation marks and citations omitted)). "[T]o bring an argument within the exception 'a[n appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred.'" Id. (quoting Redman v. Commonwealth, 25 Va. App. 215, 221 (1997)).

No miscarriage of justice occurred in this case. Mother challenges a JDR court order that, she argues, did not account for K.F.'s age and whether she objected to the termination of parental rights. "[T]he Court of Appeals of Virginia is a court of limited jurisdiction. Unless a statute confers jurisdiction to this Court, we are without power to review an appeal." Reaves v. Tucker, 67 Va. App. 719, 727 (2017) (quoting Prizzia v. Prizzia, 45 Va. App. 280, 286 (2005)). Code § 17.1-405 states, in pertinent part, that "[a]ny aggrieved party may appeal to the Court of Appeals from . . . [a]ny final judgment, order, or decree of *a circuit court* involving . . . the control or disposition of a child . . . ." (Emphasis added.) This Court does not have the jurisdiction to review the rulings of a juvenile and domestic relations district court.

Moreover, mother argues that the circuit court failed to consider K.F.'s age and preference regarding the termination of mother's parental rights. To support her arguments, mother relies on Code § 16.1-283(G), which provides, in part, that "residual parental rights shall not be terminated if it is established that the child, if [s]he is 14 years of age or older or otherwise of an age of discretion as determined by the court, objects to such termination." Mother contends that the circuit court erred because the "question . . . [was not] clearly and distinctly presented to [K.F.] . . . [and] her answer [was] not properly given" to the circuit court. The

circuit court, however, heard from the guardian *ad litem* that K.F. wanted to live with her foster mother. Moreover, mother acknowledged that there were instances when she questioned K.F. because K.F. expressed her desire to stay with the foster mother. In its final order, the circuit court found that K.F. was at least fourteen years old and did not object to the termination of mother's parental rights. Thus, the record reflects that the circuit court considered K.F.s' preference, as reported by the guardian *ad litem*. Accordingly, there was no miscarriage of justice, and the ends of justice does not apply.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>